**LEE MEMORIAL HOSPITAL, Appellant,**

v.

**ELGIN–BUTLER BRICK CO. et al.,**
**Appellees.**

No. 11645.

Court of Civil Appeals of Texas.

Austin.

Jan. 8, 1969.

M. F. Kieke, Giddings, Sneed, Vine, Wilkerson & Selman, Sam R. Perry, Austin, for appellant.

Hooper & Robinson, Malcolm Robinson, Austin, for appellees.

HUGHES, Justice.

This suit is in the form of garnishment proceedings by Elgin-Butler Brick Co., Elgin-Standard Brick Mfg. Co. and Contractors Equipment & Supply Co., creditors of J. W. Garret, appellees, against Lee Memorial Hospital, garnishee, appellant.

There is no statement of facts but the trial court made and filed findings of facts and conclusions of law and they and the transcript are the source of the facts stated by us.

Each of the named creditors had obtained a judgment against J. W. Garret, doing business as Garco of Georgetown, on which

there was owing at the time of trial a total of $11,262.59.

J. W. Garret was obligated by contract, dated September 30, 1965, with Lee Memorial Hospital to construct certain improvements for it in Lee County, Texas, for a total contract price of $254,233.67.

On the same date Garret, as principal, and Fidelity and Deposit Company of Maryland, as surety, executed a statutory payment bond pursuant to the provisions of Art. 5472d, Vernon's Tex.Civ.St. This bond was approved by Lee Memorial Hospital on October 8, 1965, and was filed in the office of the County Clerk of Lee County on November 9, 1965.

Garret also executed a performance bond with the same surety on September 30, 1965.

In April 1967, Garret defaulted in the performance of his contract and the surety on his bonds took over such performance and has made payments to claimants and for expenses under such bonds.

Lee Memorial Hospital, at the time of trial, owed $13,517.47 on its contract with Garret.

Appellees furnished materials and supplies to Garret which were used by him in the performance of his contract with the Hospital. They failed, however, to timely perfect their claims against the surety on the payment bond. This surety, Fidelity and Deposit Company of Maryland, is claiming any unpaid balance which the Hospital owes on its contract with Garret.

We copy the eighth finding of fact:

"Lee Memorial Hospital was negligent in not filing its plea to implead Fidelity and Deposit Company of Maryland or J. W. Garrett as third party defendants because Lee Memorial Hospital was served with this lawsuit on or about May 30, 1967; did not file its plea to implead any third party defendants until March 23, 1968; and, did not bring such plea to implead to the attention of the Court until the morning of April 15, 1968, the day set for the garnishment trial."

The trial court, in this respect, made the following legal conclusion:

"To have allowed the Garnishee to implead any third parties as of April 15, 1968, the day of the trial, would have unduly delayed the disposition of this action after it had been pending since on or about May 30, 1967."

The trial court rendered judgment for appellees for the amounts of their judgments, interest and attorney's fees which judgment included the following recitation:

"whereupon, the Court proceeded to listen to the garnishee's plea to implead the third party, Fidelity & Deposit Company of Maryland, and the Court proceeded to listen to the evidence and argument of counsel and the facts being undisputed that the third party, Fidelity & Deposit Co., of Maryland, could not claim by way of subrogation or otherwise those funds being held by the garnishee for the debts of J. W. Garret d/b/a Garco of Georgetown for materials supplied to the garnishee's hospital and therefore overruled the garnishee's plea to implead the third party, Fidelity & Deposit Co., of Maryland; * * *"

The first three points of appellant, jointly briefed, are that the trial court erred in finding that the surety on Garret's bond could not claim the funds held by the Hospital and in denying appellant the opportunity to implead such surety.

This suit was filed May 30, 1967, and appellant answered June 13, 1967. A supplemental petition was filed June 17, 1967. On March 23, 1968, appellant filed an amended answer and requested leave to implead Garret and the surety on Garret's bonds, Fidelity and Deposit Company of Maryland. This request was not called to the attention of the court until April 15, 1968, the date on which the case was heard and judgment rendered.

Appellant, in its proposed "Cross-Action in Interpleader" stated it was " * * * willing and able at such time as ordered by the court to deposit with the clerk of the court the sum of $13,517.47 * * * "

Appellees do not question the right of appellant to implead all claimants to the funds held by it. See Rule 43, Texas Rules of Civil Procedure. They only contend that the bill of interpleader was not promptly or timely filed and that the discretion of the trial court in denying the motion to implead was properly exercised.

We are very reluctant to hold that the trial court abused his discretion in denying the motion to implead Garret and his surety but in view of the existence of a reasonable doubt that Lee Memorial Hospital might, if this judgment is paid, be subjected to double liability,[1] we have concluded that an abuse of discretion is shown.

In Nixon v. New York Life Ins. Co., 100 Tex. 250, 98 S.W. 380 (1906), the Court described an interpleader as follows:

"The remedy of interpleader is an equitable one, and is for the protection of the disinterested and innocent stakeholder, who claims no interest in the money or property as a claimant or litigant, and who, by reason of the conflicting claims of persons who derive their title either from a common source or one from the other, and the uncertain and doubtful position in which he is placed by the diverse claimants, knows not what to do, and fearing he may be hurt by some of them asks instructions, and protection from a court of equity."

The equities favoring an innocent stakeholder of the stature of a hospital are so strong as to persuade us that the delay in requesting permission to file an interpleader, not quite nine months from the date of appellees' last pleading, by comparison, is insignificant. Nor are we convinced that to have granted leave to file an interpleader "would have unduly delayed the disposition of this action." Service on the surety company could have been readily and easily obtained. It is the only other claimant to these funds which the record discloses.

We are also persuaded in reaching our decision by the inconsistency between the reason assigned in the judgment for denying appellant the right to implead the surety and the reason for this action given in the findings of fact and conclusions of law as shown above.

It seems to us that the judgment denying the right to implead the surety was based upon the opinion of the court that there was no reasonable doubt concerning the claim of the surety, whereas, the findings and conclusions do not reflect this but rather rely on laches and delay in disposition of the case.

Although with hesitancy and a great deal of reluctance, we sustain the points under discussion to the extent indicated.

Appellant's last point is that the trial court erred in not recognizing the subrogation rights of the surety as being superior to the rights of appellees. It is not proper for us to pass on this point in the absence of the surety. In fact, we could not do so without knowing the full nature and extent of its claims. All that we have held is that the claims of the surety create a doubt justifying appellant in invoking the equitable protection of the court through interpleader proceedings.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.

1. See Trinity Universal Insurance Company v. Bellmead State Bank of Waco,

396 S.W.2d 163, Tex.Civ.App. Waco, writ ref. n.r.e. (1965).