TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00264-CV






Sherhonda Ginn, Richard Ginn, and Scott Johnson, Appellants




v.




Texas Farmers Insurance Company and Mid-Century Insurance


Company of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 94-02816, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING







 This is an appeal from consolidated suits in which appellants, Sherhonda Ginn and
Scott Johnson, sought to recover Uninsured/Underinsured Motorist ("UM") benefits from
appellees, Texas Farmers Insurance Company ("Farmers") and Mid-Century Insurance Company
of Texas ("Mid-Century"). (1) Following a jury trial, the trial court awarded Sherhonda and Scott,
jointly, the $50,000 per person limit of UM benefits under the Farmers policy, declined to award
any attorney's fees to appellants' counsel, and assessed court costs against appellants. In twenty
points of error, appellants now appeal. We will affirm. 


STATEMENT OF FACTS


 On October 1, 1993, an underinsured driver hit sixteen-year-old Scott head-on as
Scott was slowing down to turn into the driveway of his home where he lived with his mother,
Sherhonda, and stepfather, Richard. (2) When the accident occurred, Sherhonda and Richard were
sitting in the living room watching television. Both of them heard the collision of the vehicles
which "sounded like an explosion." Richard rushed outside to investigate, then came back in the
house and told Sherhonda that there had been a wreck and to call 911. After calling the police,
Sherhonda ran to the accident scene, which was about seventy-five yards from her house. When
she reached the accident, she saw her son's car in a ditch with smoke pouring out of it. Initially,
she feared her son was dead, but Richard, who was leaning through the passenger side window,
told her that Scott was talking to him. Sherhonda leaned into the driver's side window and put her
arms around Scott to comfort him. Blood was running down his face, and he had deep cuts on his
neck. Sherhonda could see the bone protruding from his broken leg. While waiting for the
ambulance to arrive, Sherhonda continued to hold the barely conscious Scott and told him not to
move. After twenty-five or thirty minutes, the ambulance reached the scene and transported Scott
to the hospital.

 At the time of the accident, Scott was driving a 1986 Pontiac insured by Farmers. 
Sherhonda had purchased the Farmers policy on September 2, 1993, and the policy was to remain
in effect until March 2, 1994. (3) Sherhonda and Richard also carried insurance on their other two
vehicles, neither of which was involved in the accident, with Mid-Century. (4) Both the Farmers
policy and the Mid-Century policy provided UM benefits of up to $50,000 per person and
$100,000 per accident.


PROCEDURAL HISTORY

 Although the appellate record does not contain all the documents in the case, we
believe the following sets out the pertinent matters pertaining to the complicated and tortured
procedural history of this cause. Sherhonda filed suit solely in her individual capacity against both
Mid-Century and Farmers on March 10, 1994. (5) She moved to intervene in her individual suit as
Scott's next friend on May 31, 1994. (6) On that same day, Farmers filed its first interpleader
petition in which it admitted it owed $50,000 under the UM provision of its policy but claimed
a dispute existed over disbursement of the funds among Sherhonda, Scott, Methodist Hospital, and
Employee Benefit Plan Administration. Farmers tendered $50,000 into the court's registry as an
interpleader and requested that it be discharged from liability to defendants and awarded
reasonable attorney's fees and court costs related to the interpleader action. Methodist filed an
answer in which it responded that it was owed sums resulting from Scott's medical treatment and
that Sherhonda had assigned the benefits of an insurance policy to Methodist. Although the docket
sheet indicates that Farmers filed a first amended petition in interpleader on June 27, 1994, this
document is not included in the appellate record. We assume that Richard Ginn was named as an
additional defendant in interpleader in this petition because he was not named in the first petition,
yet he filed an answer in response to Farmers interpleader petition on August 5, 1994. Farmers
named Richard as a defendant in its second amended petition in interpleader. On August 1, 1994,
Methodist filed an amended answer in which it disclaimed any interest in the Farmers insurance
proceeds. Employee Benefit Plan Administration disclaimed any interest in the interpleaded funds
on January 9, 1995.

 In January 1995, Sherhonda nonsuited her claims against Mid-Century, but later
refiled suit against the insurance company. Farmers filed a second, and apparently final, amended
petition in interpleader on June 2, 1995. Despite Employee Benefit Plan Administration's
previous disclaimer of the interpleaded funds, Farmers named as defendants in interpleader the
Employee Benefit Plan Administration, Sherhonda, Richard, and Scott. In October 1995, the trial
court consolidated the suits against Farmers and Mid-Century. (7) Scott, having reached the age of
majority, joined his mother as a party plaintiff in the consolidated suits in December 1995 and
adopted all the pleadings his mother filed on his behalf as next friend.

 In the most recent pleadings against the companies, Sherhonda seeks to recover for
Scott's injuries and medical expenses and for her own injuries as a bystander under the UM
provisions, and Scott seeks to recover for his injuries and medical expenses. (8) Specifically,
Sherhonda seeks a declaratory judgment that Farmers is obligated to pay her UM benefits by way
of her derivative claim for Scott's injuries and medical expenses and for injuries she suffered in
her own right as a bystander. Sherhonda further seeks a judgment awarding her those UM
benefits for Scott's injuries and medical expenses and for her bystander injuries. Scott asserts one
claim against Farmers for recovery of UM benefits for his injuries and medical expenses. The
pleadings state that Sherhonda and Scott seek recovery of not more than the $100,000 per accident
limit of the UM benefits. In addition, Sherhonda and Scott request reasonable and necessary
attorney's fees and costs.

 Sherhonda asserts two causes of action against Mid-Century. First, she seeks a
declaratory judgment that Mid-Century is obligated to pay her the UM benefits under that policy
for Scott's injuries and medical expenses by way of her derivative claim and for her bystander
injuries asserted in her own right. Second, Sherhonda seeks a judgment awarding her the $50,000
per person UM benefits for Scott's injuries and medical expenses and the remaining $50,000 under
the per accident limit for her bystander injuries, for a total $100,000 recovery. Sherhonda also
requests reasonable and necessary attorney's fees and court costs.

 The case was tried to a jury in early December 1995. At the close of the evidence,
the trial court granted an instructed verdict for Mid-Century against Sherhonda and Scott on all
claims, and also granted a partial instructed verdict in favor of Farmers against Sherhonda on her
bystander claim. The remaining claims against Farmers were submitted to the jury. The jury
found that $75,000 would compensate Scott for his past and future physical pain, mental anguish,
and physical impairment, but that only $2,500 was necessary for past medical expenses. The jury
awarded appellants one percent of any recovery, or $700, as attorney's fees for preparation of trial
and failed to award any amount for appeal. The trial court rendered a judgment awarding
Sherhonda and Scott the $50,000 policy limit that Farmers had deposited into the court's registry,
plus accrued interest, and discharged Farmers from further liability to Sherhonda, Scott, and
Richard. The trial court also declined to award any attorney's fees and taxed court costs against
appellants. In twenty points of error, appellants now appeal.


DISCUSSION


I. The Instructed Verdicts

 In their first seven points of error, appellants complain of the instructed verdicts
in favor of Mid-Century and Farmers. Appellants generally contend in their first point of error
that the trial court erred in granting the instructed verdict in favor of Mid-Century against
Sherhonda and Scott. In their second point of error, appellants complain that the evidence did not
establish as a matter of law that there was no coverage under the Mid-Century policy available to
Sherhonda and Scott. Point of error three claims the evidence did not establish as a matter of law
that there was no coverage under the Mid-Century policy available to Sherhonda for her bystander
injuries. Their fourth point of error avers that the evidence did not establish as a matter of law
that Sherhonda did not suffer any bodily injuries in connection with her bystander claim under the
Mid-Century policy. In their fifth point of error, appellants argue that the trial court erred in
granting a partial instructed verdict in favor of Farmers against Sherhonda. Appellants allege in
the sixth and seventh points of error that the evidence did not establish as a matter of law that there
was no coverage available under the Farmers' policy to Sherhonda for her bystander injuries and
that the evidence did not establish as a matter of law that Sherhonda did not suffer any bodily
injuries in connection with bystander claim under the Farmers' policy.

 In reviewing the granting of an instructed verdict, the appellate court must
determine whether there is any evidence of probative force to raise a fact issue on the material
questions presented. See Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). The
reviewing court must consider all of the evidence in a light most favorable to the party against
whom the verdict was instructed. See S.V. v. R.V., 933 S.W.2d 1, 8 (Tex. 1996). We must
disregard all contrary evidence and inferences, extending the benefit of all reasonable inferences
created by the evidence to the losing party. See Szczepanik, 883 S.W.2d at 649. If there is any
conflicting evidence of probative value on any theory of recovery, an instructed verdict is
improper, and the case must be reversed and remanded for jury determination of that issue. See
id.

 In the final judgment, the trial court stated that it granted Mid-Century an instructed
verdict because, as a matter of law, there was no coverage available to Sherhonda and Scott under
the Mid-Century policy. Appellants argued at trial, and continue to assert on appeal, that the 1986
Pontiac was covered under the policy according to the newly acquired vehicle provision. Mid-Century responds that the vehicle was not a newly acquired vehicle under the terms of the
contract, and even assuming it were, any coverage terminated when Sherhonda purchased the
separate Farmers insurance policy. We agree with Mid-Century that the vehicle was not covered
under the newly acquired vehicle provision of the policy.

 The Mid-Century policy contained the following language:


"Your covered auto" means:


1. Any vehicle shown in the Declarations;


2. Any of the following types of vehicles on the date you became the owner:


 a. a private passenger auto;


* * * * *



This provision applies only if you:


 a. acquire the vehicle during the policy period; and

 

 b. notify us within 30 days after you become the owner.



 It is undisputed that the 1986 Pontiac was not a scheduled vehicle listed in the
declarations section of the policy. The parties disagree whether the vehicle was acquired during
the policy period and, therefore, entitled to coverage. The effective dates of the policy were from
May 30 to November 30, 1993. Mid-Century contends that the vehicle was not acquired during
the policy period because Sherhonda purchased the vehicle on February 2, 1993, before the
effective date of the policy. Appellants argue that the vehicle was acquired during the policy
period because Sherhonda took possession of it on September 2, 1993. Appellants' position,
however, ignores the language of the policy specifically referring to the policyholder becoming
the owner of the vehicle. The terms of the policy state that it covers vehicles on the date the
policyholder becomes the owner of the vehicle and that the policyholder must notify Mid-Century
of the acquisition within thirty days after becoming the owner. Under the express terms of the
policy, therefore, a vehicle is acquired during the policy period when the policyholder becomes
the owner and not when the policyholder takes possession.

 The evidence adduced at trial conclusively established that Sherhonda purchased
the vehicle and became the owner on February 2, 1993. Sherhonda testified several times during
trial that she paid her mother and step-father, the previous owners, for the vehicle on February
2, 1993. Sherhonda's mother, Shirley Gage, testified that the papers to the car were signed in
February because her husband had a terminal illness. Although Mrs. Gage stated she did not
remember when she signed the title assignment, on cross-examination she identified her signature
on the title assignment, which was dated February 2, 1993. Moreover, the title and tax records
for the 1986 Pontiac, which were introduced into evidence, indicate that Sherhonda became the
owner of the vehicle on February 2, 1993. The title to the 1986 Pontiac reflects that on February
2, 1993, Sherhonda's mother and step-father assigned the vehicle to her. The tax collector's
receipt for title registration, (9) although dated September 13, 1993, indicates that Sherhonda was
assessed a penalty for not filing the application for transfer of title and registration with the County
Tax Assessor-Collector within twenty working days of the date of transfer. The tax records
further indicate that the vehicle's registration was set to expire in February 1994.

 Because Sherhonda became the owner of the 1986 Pontiac on February 2, 1993,
and Mid-Century's policy did not come into effect until May 30, 1993, she did not acquire the
vehicle during the policy period. Consequently, the 1986 Pontiac was not a covered vehicle under
the Mid-Century policy, and there was no coverage available to Sherhonda and Scott under this
policy. Points of error one and two are overruled.

 The trial court also granted Mid-Century and Farmers instructed verdicts on
Sherhonda's bystander claims, specifying in its judgment that no coverage was available to
Sherhonda under the companies' UM polices because she had not suffered bodily injury within the
meaning of the policies. Appellants argue that it was error for the trial court to grant the
instructed verdicts because the evidence demonstrated that Sherhonda had a viable bystander claim
and that she had suffered emotional distress and mental anguish. Even assuming that Sherhonda
has a bystander cause of action under the facts of this case, we agree with the trial court that
Sherhonda cannot recover under the insurance policies because she has not suffered a bodily
injury. (10)

 The UM provisions of the Farmers and Mid-Century insurance contracts both state:


PART C--UNINSURED/UNDERINSURED MOTORISTS COVERAGE


Insuring Agreement


We will pay damages which a covered person is legally entitled to recover from the
owner or operator of an uninsured motor vehicle because of bodily injury sustained
by a covered person, or property damage, caused by an accident. 



The insurance policies require the insured to have suffered bodily injury in order to receive
benefits. Although bodily injury is not defined in the policies, the supreme court has explained
that the "commonly understood meaning of 'bodily' . . . implies a physical, and not purely mental,
emotional, or spiritual harm." See Trinity Univ. Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex.
1997). In Cowan, the supreme court held that purely emotional injuries do not constitute bodily
injury within the terms of insurance contracts. See id. at 823. The supreme court further held that
the term bodily injury requires "an injury to the physical structure of the human body." Id. 
Moreover, the supreme court stated "[t]hat Texas tort law allows for recovery of mental anguish
damages unaccompanied by physical manifestations in some circumstances . . . does not mean that
insurance coverage for bodily injury necessarily encompasses purely emotional injuries." Id. In
Miller v. Windsor Insurance Co., 923 S.W.2d 91 (Tex. App.--Fort Worth 1996, writ denied), the
court of appeals stated that mental anguish suffered by one not involved in an actual accident is
not a bodily injury. See 923 S.W.2d at 97. Likewise, in Eshtary v. Allstate Insurance Co., 767
S.W.2d 291 (Tex. App.--Fort Worth 1989, writ denied), the court of appeals held that "the term
'bodily injury' cannot reasonably be construed to incorporate mental pain and anguish if the claim
being asserted is a derivative claim arising only as the consequence of injuries to another person."
See 767 S.W.2d at 293.

 Here, the evidence showed that Sherhonda suffered mental anguish, which is
understandable, but she suffered no physical injury. Sherhonda testified that after the accident she
could not sleep or eat, that she had horrible nightmares, and that she was sick after she ate. She
stated that she did not seek psychological or psychiatric counseling for her emotional trauma. 
Sherhonda further testified that she had not been to doctors, incurred medical bills, or been
prescribed medication for any condition resulting from the accident. Without evidence of a
physical harm to her, Sherhonda was not entitled to recover from either Mid-Century or Farmers
under the insurance policies for any bystander cause of action. Consequently, the trial court
properly granted the instructed verdicts. Points of error three through seven are overruled.


II. Farmers' Interpleader Action

 In point of error eight, appellants assert that the trial court erred in finding that
Farmers was entitled to interpleader status. Texas Rule of Civil Procedure 43 authorizes a
defendant who receives multiple claims to property in its possession to join all claimants in one
lawsuit and deposit the disputed property into the registry of the court. See Tex. R. Civ. P. 43. 
The purpose of interpleader is to allow an innocent stakeholder facing rival claims to let the courts
decide who is entitled to the fund. See Petro Source v. 3-B Rattlesnake Refining, 905 S.W.2d 371,
375 (Tex. App.--El Paso 1995, writ denied). This allows the stakeholder to avoid the peril of
acting as judge and jury and further relieves the stakeholder of the vexation and expense of
multiple litigation and the risk of multiple liability. See id. An interpleading party is entitled to
relief after establishing that: (1) the interpleading party is either subject to, or has reasonable
grounds to anticipate, rival claims to the same fund or property; (2) the interpleading party has not
unreasonably delayed in filing the interpleader action; and (3) the interpleading party has
unconditionally tendered the fund or property into the registry of the court. See Petro Source, 905
S.W.2d at 375; Olmos v. Pecan Grove Mun. Util. Dist., 857 S.W.2d 734, 741 (Tex.
App.--Houston [14th Dist.] 1993, no writ); Savings & Profit Sharing Fund of Sears Employees
v. Stubbs, 734 S.W.2d 76, 79 (Tex. App.--Austin 1987, no writ).

 In response to question five, the jury found that when Sherhonda presented Farmers
with the claim for Scott's bodily injuries, there were competing claims to the monies. Appellants
challenge the legal and factual sufficiency of the evidence to support the jury's answer. The
evidence shows that on October 4, 1993, Sherhonda notified Farmers of the accident. On October
18, Farmers received a notice that Methodist had filed a hospital lien for care given to Scott as a
result of the accident. Methodist asserted in the lien notice that Scott, Sherhonda, and Farmers
were liable to it for charges totalling $50,413.55. Methodist listed in the notice the specific policy
number of Farmers at issue in this case.

 On October 19, Farmers received a document signed by Sherhonda in which she
assigned to Methodist her right to any benefit payments due her for services rendered as provided
in the Farmers' insurance policy. In June 1994, Methodist answered Farmers' interpleader
petition and alleged that Sherhonda owed it money for treating Scott's injuries. Methodist claimed
that the assignment of benefits entitled it to receive all amounts otherwise payable to Sherhonda
or Scott until the debt owed it was discharged.

 Travis Guy, a claims supervisor for Farmers Insurance Group, testified that there
had been competing interests in the $50,000 per person UM coverage since he became involved
with the case in February 1994. Guy testified that Farmers did not issue a check for $50,000 to
Sherhonda, Scott, and Methodist because it believed that Scott's minority required the assignment
to be court-approved. Farmers also wanted a release from all parties from further liability in
exchange for payment. Dennis Burrows, an attorney who had reviewed documents in the case,
testified that a health insurance carrier was also claiming an interest in the money. We hold that
legally sufficient evidence supports the jury's answer to question five.

 Appellants point to evidence that, as early as December 1994, employees working
for Guy requested authority to pay Sherhonda $50,000. Guy also testified that the policy
prohibited assignment without Farmers' consent and that, to his knowledge, Farmers had not
consented to the assignment of benefits. Farmers had been involved in previous litigation in which
a Texas appellate court had held an assignment without consent to be invalid. Appellants argue
that the policy's prohibition against such assignments barred all claims to the funds other than
theirs. The jury could have inferred, however, that the conflict between the policy and the
assignment would lead to litigation, supporting Farmers' interpleader.

 Contrary to appellants' assertion, the evidence does not show any contracts between
Sherhonda and either Methodist or the health insurer, Employee Benefit Plan Administration, Inc.,
that would have given them claims only against her and rendered their claims against Farmers
frivolous. Finally, nothing in the record shows that Farmers was independently liable to
Sherhonda, such as by a prior judgment or other legal obligation. See Farmers State Bank of
Meridian v. National Fire Ins. Co. of Hartford, Conn., 169 S.W.2d 545, 549 (Tex. Civ.
App.--Waco 1943, no writ). Considering all the evidence, we hold that the evidence favoring the
finding of competing claims is not so weak, nor the evidence to the contrary so strong, as to
render the finding manifestly unjust.

 No questions were submitted to the jury on the second and third elements required
for interpleader status, lack of unreasonable delay and unconditional tender. Because one element
of this ground was submitted, however, the omitted elements are deemed found by the court in
support of the judgment. See Tex. R. Civ. P. 279. Appellants challenge the legal sufficiency of
the evidence to support these deemed findings.

 On the element of lack of unreasonable delay, Guy testified that after Farmers
received notice of Sherhonda's assignment of benefits, it hired an attorney to proceed with a
"friendly suit." Sherhonda filed her original petition in March 1994, Farmers answered one
month later, and it filed its petition in interpleader two months after that. Farmers's petition in
interpleader was filed one and one-half years before the case went to trial. The purpose of
requiring a petition in interpleader to be filed promptly is to avoid delaying disposition of the
action. See Lee Memorial Hosp. v. Elgin-Butler Brick Co., 436 S.W.2d 354, 356 (Tex. Civ.
App.--Austin 1969, no writ); 1 Texas Civil Practice § 5.65, at 585 (Diane M. Allen et al. eds.,
1992). The evidence shows that Farmers filed its petition in interpleader early enough to avoid
delaying disposition of the cause. See Lee Memorial Hosp., 436 S.W.2d at 356 (petition brought
to court's attention on the day of trial would not necessarily cause undue delay). We therefore
hold that legally sufficient evidence supports the deemed finding that Farmers did not unreasonably
delay in filing its interpleader action.

 Appellants next argue that Farmers made a conditional tender because Farmers
sought to be discharged from all liability to appellants and requested that attorney's fees be paid
from the interpleaded funds. The very reason for interpleading disputed funds, however, is to
obtain a discharge of liability to the competing claimants. Petro Source, 905 S.W.2d at 375. If
an insurer has a reasonable doubt as to which of rival claimants is entitled to the proceeds of a
policy, but admits liability and deposits the funds into the court, it is liable only for the face
amount of the policy. Great Am. Reserve Ins. Co. v. Sanders, 525 S.W.2d 956, 958 (Tex. 1975). 
In addition, an innocent stakeholder in an interpleader action is entitled to have its attorney's fees
paid out of the interpleaded funds. United States v. Ray Thomas Gravel Co., 380 S.W.2d 576,
581 (Tex. 1964). Burrows testified that Farmers interpleaded the $50,000 so that the dispute over
it could be resolved. He stated that resolving the dispute would prevent the interpleader from
paying what it owed more than once and that an interpleader is authorized to recover its attorney's
fees. We conclude that legally sufficient evidence supports the deemed finding that Farmers
unconditionally tendered the funds.

 Appellants additionally challenge the factual sufficiency of the evidence to support
the jury's finding in response to question six that Farmers tendered the funds before any of the
disputed claims were resolved. As discussed, after being notified of competing claims to the
$50,000, Farmers filed its interpleader petition. Two months later, Methodist filed an amended
answer disclaiming any interest in the funds. The jury could have inferred from Burrows's
testimony that the health insurer withdrew its claims after Farmers interpleaded the funds. The
remaining claims to the $50,000 were tried to the jury. We determine that factually sufficient
evidence supports the jury's finding. In sum, the circumstances reflected in the record concerning
Farmers and the dispute over its insurance proceeds suggest that this is just the situation in which
an interpleader action is appropriate. Having addressed each of appellants' arguments against
Farmers's interpleader status, we overrule point of error eight.

 In points of error nine and ten, appellants complain of the trial court's discharge
of Farmers from all liability to Richard. Farmers named Richard as a defendant in its amended
interpleader petition and alleged that Richard, as Sherhonda's husband and Scott's stepfather,
might have a community obligation to pay the medical and hospital bills for treating Scott's
injuries. Richard generally denied Farmers' allegations, though he also claimed that Sherhonda
and Scott's damages exceeded $100,000 and prayed that the trial court award Sherhonda and Scott
the $100,000 policy limits as compensation.

 The effect of an interpleader action is to discharge the interpleading party from
liability to the competing claimants. See Petro Source, 905 S.W.2d at 375. We have already
determined that Farmers was entitled to interpleader status. To the extent appellants contend that
Richard made no claim under the policy and should not have been named as a defendant, we fail
to see how the discharge harms Richard. If appellants' complaint is rather that Richard should
have been awarded a share of the funds, it was Richard's burden to prove his entitlement to a
share. McBryde v. Curry, 914 S.W.2d 616, 620 (Tex. App.--Texarkana 1995, writ denied). 
Richard points to no evidence supporting any claim he might have to the funds, and we have found
none. The trial court did not err in discharging Farmers from liability to Richard. We overrule
points of error nine and ten.

 Appellants argue in point of error eleven that the jury's answers to questions five
and six were immaterial and that the trial court should have disregarded then. Appellants have
waived this point by failing to offer any argument or authorities. See Tex. R. Civ. P. 38.1(h);
Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983). We overrule point eleven.

 In point of error twelve, appellants contend that the trial court erred in admitting 
in evidence Methodist's original answer to Farmers' interpleader petition. Farmers offered the
answer to show that Methodist asserted an interest in the interpleaded funds in this lawsuit. Over
appellants' hearsay objection, the trial court admitted the answer for that limited purpose. 
Methodist asserted in the answer that Sherhonda's assignment entitled it to receive money
otherwise due her or Scott up to the amount Sherhonda was indebted to it. The answer was not
offered to prove the truth of Methodist's assertions, only that Methodist made them. Because the
answer did not constitute hearsay, the trial court did not err in admitting it. See Tex. R. Evid.
801(d). Even if admitting the answer were error, however, appellants could not have been harmed
given the remaining evidence of Methodist's and others' claims to the funds. We therefore
overrule point twelve.

 Several of the remaining points of error are resolved by the following rule: an
insurance company that declines to pay the named beneficiary because of a reasonable doubt, but
admits liability and deposits the funds into the court, is liable only for the face amount of the
policy. See Sanders, 525 S.W.2d at 958. Points of error fourteen, fifteen, and nineteen relate to
the jury's answers to questions concerning attorney's fees and the trial court's refusal to award
attorney's fees. We overrule these points of error because Farmers was not obligated to pay more
than the $50,000 it deposited into the registry of the court. Likewise, appellants complain that the
jury's response to the question concerning the amount of Scott's medical expenses was against the
great weight and preponderance of the evidence. Again, even assuming this is true, it is irrelevant
because Farmers does not owe more than the $50,000 it tendered. We also conclude that the trial
court did not err in taxing costs against appellants. Point of error eighteen is overruled.

 Appellants further complain of the trial court's failure to award pre-judgment and
post-judgment interest. However, the trial court's order plainly states that it is awarding
Sherhonda, in her former capacity as Scott's next friend, and Scott the $50,000 deposited into the
court's registry plus interest. Thus, we overrule point of error seventeen. The trial court further
ordered that the $50,000 be released to Sherhonda and Scott jointly; thus no post-judgment interest
should have accrued, and any that did was a result of appellants' actions. We overrule point of
error twenty.


CONCLUSION

 Having overruled all of appellants' twenty points of error, we affirm the judgment
of the trial court.



 

 Marilyn Aboussie, Justice

Before Powers, Aboussie and B. A. Smith

Affirmed

Filed: October 15, 1998

Do Not Publish

1. Appellants are Sherhonda Ginn, her husband, Richard Ginn, and her son, Scott Johnson.
Apparently, Richard has not advanced any claims against Farmers or Mid-Century. His
involvement in the suit seems to be only as a result of Farmers's interpleader petition, which
names him as an interpleader-defendant. Richard, however, complains on appeal that the trial
court should not have discharged Farmers from all liability to him and is a named appellant on the
documents pertaining to the appeal. Consequently, we will refer to Sherhonda, Richard and Scott
collectively as "appellants."
2. The driver of the car that hit Scott was killed in the accident.
3. Sherhonda testified that she initially wanted to add the 1986 Pontiac to her existing Mid-Century insurance policy, which she and Richard had renewed in May 1993 to insure their two
cars. However, Sherhonda stated that she was told that, at that particular time, Mid-Century could
not cover "youthful drivers," such as the sixteen-year-old Scott. Sherhonda, therefore, purchased
the separate insurance policy from Farmers to cover Scott and the 1986 Pontiac.
4. The effective dates of the Mid-Century renewal policy were May 30, 1993, to November 30,
1993.
5. In her original petition, Sherhonda also levied bad faith claims against Farmers and Mid-Century and accused them of violating the Texas Insurance Code. These additional causes of
action were severed and remain pending in the trial court. 
6. Apparently, at some point, the court appointed a guardian ad litem to represent Scott's
interest in the $50,000, as he was still a minor. The appellate record is lacking, though, in
documents pertaining to the involvement of Scott's guardian ad litem.
7. Specifically, the trial court consolidated Sherhonda Ginn, Individually and as Next Friend
of Scott Johnson v. Mid-Century Insurance Company of Texas and Sherhonda Ginn, Individually
and as Next Friend of Scott Johnson v. Texas Farmers Insurance Company. The consolidated suit
was styled Sherhonda Ginn, Individually and as Next Friend of Scott Johnson v. Mid-Century
Insurance Company of Texas and Texas Farmers Insurance Company.
8. The pleadings against Farmers were amended during trial by way of a trial amendment. As
for the pleadings against Mid-Century, it appears from the appellate record that the most recent
pleadings were filed on September 22, 1995.
9. The full title is "Tax Collector's Receipt For Texas Title Application/ Registration/ Motor
Vehicle Tax."
10. We recognize that the supreme court has recently addressed a plaintiff's right to recover as
a bystander under facts similar to ours. See United Servs. Auto. Ass'n v. Keith, 970 S.W.2d 540
(Tex. 1998). Because we resolve Sherhonda's bystander claim on a different issue, however, we
need not consider the application of Keith here.


 appellants. Point of error eighteen is overruled.

 Appellants further complain of the trial court's failure to award pre-judgment and
post-judgment interest. However, the trial court's order plainly states that it is awarding
Sherhonda, in her former capacity as Scott's next friend, and Scott the $50,000 deposited into the
court's registry plus interest. Thus, we overrule point of error seventeen. The trial court further
ordered that the $50,000 be released to Sherhonda and Scott jointly; thus no post-judgment interest
should have accrued, and any that did was a result of appellants' actions. We overrule point of
error twenty.


CONCLUSION

 Having overruled all of appellants' twenty points of error, we affirm the judgment
of the trial court.



 

 Marilyn Aboussie, Justice

Before Powers, Aboussie and B. A. Smith

Affirmed

Filed: October 15, 1998

Do Not Publish

1. Appellants are Sherhonda Ginn, her husband, Richard Ginn, and her son, Scott Johnson.
Apparently, Richard has not advanced any claims against Farmers or Mid-Century. His
involvement in the suit seems to be only as a result of Farmers's interpleader petition, which
names him as an interpleader-defendant. Richard, however, complains on appeal that the trial
court should not have discharged Farmers from all liability to him and is a named appellant on the
documents pertaining to the appeal. Consequently, we will refer to Sherhonda, Richard and Scott
collectively as "appellants."
2. The driver of the car that hit Scott was killed in the accident.
3. Sherhonda testified that she initially wanted to add the 1986 Pontiac to her existing Mid-Century insurance policy, which she and Richard had renewed in May 1993 to insure their two
cars. However, Sherhonda stated that she was told that, at that particular time, Mid-Century could
not cover "youthful drivers," such as the sixteen-year-old Scott. Sherhonda, therefore, purchased
the separate insurance policy from Farmers to cover Scott and the 1986 Pontiac.
4. The effective dates of the Mid-Century renewal policy were May 30, 1993, to November 30,
1993.
5. In her original petition, Sherhonda also levied bad faith claims against Farmers and Mid-Century and accused them of violating the Texas Insurance Code. These additional causes of
action were severed and remain pending in the trial court. 
6.