George A. TRENHOLM, Jr. et
al., Petitioners,

v.

Raymond F. RATCLIFF, Jr. et
al., Respondents.

No. C–1474.

Supreme Court of Texas.

Feb. 23, 1983.

Rehearing Denied March 30, 1983.

Scott, Douglass & Keeton, Page Keeton and Steve Selby, Austin, John Gillis, Dallas, for petitioners.

Brice & Barron, Jim K. Choate, Dallas, for respondents.

SPEARS, Justice.

Trenholm, a homebuilder, sued Ratcliff, a developer, under the Deceptive Trade Practices Act and the fraud in real estate transaction provisions of the Business and Commerce Code. There have been two trials.

After the first, the trial court rendered judgment on a jury verdict in favor of Trenholm. The court of appeals reversed the judgment and remanded for trial solely the issue of common law fraud. *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App.— Tyler 1980, writ ref'd n.r.e.).

The cause before us involves the appeal from the second trial for fraud. After the jury returned its answers to the special issues, both parties moved for judgment on the verdict, and Ratcliff, in the alternative, filed a motion for judgment *non obstante veredicto.* The trial court rendered judgment for Ratcliff, and rendered a take nothing judgment against Trenholm. The court of appeals affirmed the judgment, holding the evidence established, as a matter of law, that Trenholm did not rely on Ratcliff's representations. 636 S.W.2d 718. We reverse the judgment of the court of appeals and render judgment for plaintiff Trenholm.

George and Robert Trenholm were the principal stockholders in Oxford Building Systems, a corporation engaged in the building of custom homes. Robert sold his interest to George prior to the filing of this lawsuit. Respondent, Raymond Ratcliff is the principal owner of Ratcliff Investments and Ramahal Development Corporation.

Ratcliff, a land developer, entered into a joint venture agreement with Richardson Savings & Loan to develop and sell lots in the Greenhollow subdivision in West Plano, Texas. In November 1975, Ratcliff held a "draw meeting" to solicit local builders. The meeting was attended by several builders, including George Trenholm. At the meeting Ratcliff discussed the Greenhollow development, and invited the builders to purchase lots in the subdivision. During the presentation, Ratcliff stated a mobile home park located near Greenhollow would be a future shopping center. At the conclusion of his presentation, Ratcliff invited questions. George Trenholm asked:

> Ray, you talked in, around and about this mobile home park through your pre-sentation, and you definitely left me with the impression that its going to be moved, but before I buy any lots I specifically want to know what disposition is going to be made on that property.

Ratcliff answered:

> Don't worry about it, that's zoned commercial, and that property has already been sold. Those people have been notified that their leases will not be renewed, so the park should close up sometime in April and after that, why, after they get everything moved out over there, they will come in and bulldoze it down so by June or July it will be like there's never been a park there, and that will coincide actually just fine with the grand opening out there.[1]

Trenholm built eighteen houses in the Greenhollow development. Six houses were built for his account, and twelve were built pursuant to a joint venture with Richardson Savings & Loan. Richardson Savings & Loan would furnish the money, and Trenholm would build and sell the houses. The profits or losses of the joint venture would be split 50/50 between them.

The mobile home park was not owned by Ratcliff or by Richardson Savings & Loan, but rather by a third party. The mobile home park was not moved by the time the houses were completed for sale. The Greenhollow subdivision did poorly and on June 23, 1976, a meeting was held by Ratcliff to discuss the slow sales. Trenholm asked about the continued presence of the mobile home park, and he was told that the park would not be moved. The closings on seven of the twelve joint venture lots were held after June 23. The houses were ultimately sold at a net loss, and Trenholm settled his joint venture losses with Richardson Savings & Loan.

In the second trial for common law fraud the jury found: (1) that Ratcliff made false representations to Trenholm as to material facts with the intent to induce Trenholm to purchase Greenhollow lots, and which were

---

1. Ratcliff also made representations concerning a bridge and a school which Trenholm alleged were fraudulent. The jury findings eliminated them from consideration in this case.

relied on by Trenholm; (2) that the representations concerning the trailer park were not known by Ratcliff to be false, but were made recklessly and with a purported special knowledge; (3) that the false representations were made with malice; (4) that Trenholm did not waive his claim against Ratcliff; (5) that Trenholm could not have discovered the falsity of the false representation by reasonable investigation; (6) that Trenholm suffered $68,750 out-of-pocket losses on the six Oxford homes, $37,500 lost net profits on the twelve joint venture homes and $37,500 lost net profits on the Oxford homes; and (7) that $250,000 exemplary damages should be awarded. Both parties moved for judgment on the verdict. Ratcliff contended the jury's finding of recklessness would not support a cause of action for fraud. In the alternative, Ratcliff asked for judgment *non obstante veredicto.* The trial court rendered judgment for Ratcliff and that Trenholm take nothing.

The trial court's take nothing judgment, as we construe it, was based on one of two grounds: that a finding of recklessness would not support a cause of action for fraud concerning a future prediction, or that there was no evidence to support the jury findings in Trenholm's favor.

Ratcliff contends the necessary elements of a common law fraud action have not been established, and therefore, the jury verdict does not support a judgment for Trenholm. The elements of actionable fraud in Texas were stated in *Wilson v. Jones,* 45 S.W.2d 572, 574 (Tex.Comm.App. 1932, holding app'd) as follows:

(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.

Ratcliff argues the "trailer park representations" are matters of opinion or pre-

dictions of future events, and therefore, Trenholm must prove that Ratcliff knew they were false at the time they were made. The jury, in answer to special issue number two did not find that Ratcliff knew his representations were false. Ratcliff argues, therefore, he could not and did not make fraudulent representations.

Pure expressions of opinion are not actionable. It has been held that a representation, to be actionable, must be a representation of a material fact. *Wilson v. Jones, supra* at 574; W. Prosser, *Law of Torts* § 109 at p. 720–724 (4th ed. 1971). There are exceptions to this general rule that an expression of an opinion cannot support an action for fraud. An opinion may constitute fraud if the speaker has knowledge of its falsity. *Texas Industrial Trust, Inc. v. Luck,* 312 S.W.2d 324, 327 (Tex.Civ.App.—San Antonio 1958, writ ref'd); *T.M. Brooks v. Parr,* 507 S.W.2d 818, 820 (Tex.Civ.App.—Amarillo 1974, no writ). An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future. *Russell v. Industrial Transportation Co.,* 113 Tex. 441, 251 S.W. 1034, 1037 (Tex.Comm.App.1923, holding app'd), *aff'd on rehearing,* 113 Tex. Sup. 441, 258 S.W. 462 (1924); *Ratcliff v. Trenholm,* 596 S.W.2d 645, 651 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.); *Wright v. Carpenter,* 579 S.W.2d 575, 580 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). Additionally, when an opinion is based on past or present facts, an action for fraud may be maintained. *Buchanan v. Burnett,* 102 Tex. 492, 119 S.W. 1141, 1142 (1909); *Mutual Life & Loan Ass'n v. Jackson,* 76 S.W.2d 547, 548 (Tex.Civ.App.—Texarkana 1934, writ dism'd); *Burcum v. Gaston,* 196 S.W.2d 257, 259 (Tex.Civ.App.—Amarillo 1917, no writ). Thus, the Texas courts have held a jury finding of recklessness or special knowledge establishes a basis for fraud in the last two exceptions.

Ratcliff's representation was not merely an expression of an opinion that the trailer park would be moved in the future.

He falsely represented that the trailer park had been sold, and that notices had been given to the tenants. These are direct representations of present facts which are so intertwined with his future prediction that the whole statement amounts to a representation of facts. A jury finding of recklessness is sufficient to establish a basis for misrepresentation of facts. *Stone v. Lawyer's Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977); *Custom Leasing v. Texas Bank & Trust*, 516 S.W.2d 138, 144 (Tex. 1974).

 The jury findings were favorable to Trenholm and judgment should have been rendered in his favor unless the trial court was justified in rendering judgment notwithstanding the verdict. To sustain the action of the trial court in granting a motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be viewed in a light most favorable to the party against whom the motion is sought, and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982); *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 814–15 (Tex.1979); *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 777 (Tex. 1976).

The court of appeals affirmed the take nothing judgment, holding that the evidence established as a matter of law that Trenholm did not rely on Ratcliff's representations as to seven of the houses, and the finding of the jury on the issue of reliance should be disregarded since there could have been no reliance as to the purchases of those seven lots after June 23, 1976. That court found that since the special issue on reliance did not separate the last seven lots from those purchased before June 23, 1976, Trenholm was required to obtain a finding of reliance as to all. The court then held "as a matter of law that if Trenholm did not rely on Ratcliff's representation in the purchase of lots twelve through eighteen,

then Trenholm also did not rely on Ratcliff's representation in the purchase of lots one through eleven."

We disagree with this holding of the court of appeals and hold there is some evidence of reliance. That court based its conclusion that there was no reliance as to all eighteen lots on Trenholm's "concession" of no reliance in the purchase of the last seven lots. The pertinent part of Trenholm's post-submission brief states:

If the lots are considered individually on a one by one basis, then appellant concedes there could be no reliance in the purchase of lots after June 23, 1976, but respectfully suggests that the proper disposition would be to apportion the damages....

*However, if as the appellants contend, the lots are considered as a total building program entered into in reliance on Ratcliff's representations, then the judgment should be reversed and rendered in its entirety.* (emphasis added)

The brief does not concede the issue of reliance, but merely makes alternative arguments. *See Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982). Trenholm was arguing, in the alternative, for an apportionment of damages in the event the court of appeals rejected the theory of a "total building program."

 Trenholm argues his purchasing of the six initial lots and in entering into the joint venture agreement support the jury finding of reliance. We agree. There is evidence that the Trenholms relied on Ratcliff's representations. The record is replete with testimony that the Trenholms would not have purchased lots in Greenhollow if Ratcliff had not given them a satisfactory answer regarding the trailer park.

The court of appeals reasoned that Trenholm did not rely on Ratcliff's false representation because he discovered Ratcliff's fraud prior to the purchase of seven of the twelve joint venture lots. The Trenholms' reliance did not occur when they purchased the joint venture lots, but rather, when the Trenholms entered into the agreement obligating themselves to build the houses. The

reliance occurred in April of 1976, prior to the June 23, 1976 discovery of Ratcliff's fraud.

Trenholm's theory that he was obligated to build the last seven houses is supported by some evidence. The plans and loan applications on all twelve lots were submitted prior to the June 23rd discovery. George Trenholm testified the seven lots were closed after June 23rd "because of the agreement with Richardson Savings & Loan." Furthermore, Trenholm could not have backed out of the joint venture agreement without suffering injury. The joint venture agreement provided that the Trenholms could not recover their share of the profits under the agreement until *all* of the houses had been built and sold. If Trenholm had abandoned the agreement after discovering the fraud, he would have given up his right to whatever profits were still possible. Additionally, Trenholm testified his other loan agreements with Richardson would not have been renewed if he had abandoned the joint venture agreement. The fact that Trenholm purchased lots after the discovery of the fraud as he was obligated to do under the agreement does not conclusively establish as a matter of law that Trenholm did not rely on Ratcliff's representation, or alternatively, that he waived his claim of fraud. As Robert Trenholm testified:

> To opt out of the joint venture agreement would be kind of like stopping open heart surgery in the middle of the operation ... we had an investment in time and money, and what do we do, just say, 'I quit, I stop right here?' It is a tenuous situation to be in. And when you start in a *subdivision* you can't get mad, you know, when you have uncompleted houses, and just chop it off.

■ The issue on reliance was correctly submitted, and supports Trenholm's cause of action for fraud. Special issue number one stated:

> Do you find from a preponderance of the evidence that prior to the purchase of Greenhollow lots by Plaintiff Oxford (Trenholm), Raymond F. Ratcliff, Jr.

made false representations, either one or more, to representatives of the Plaintiff as to material facts, with the intent of inducing the Plaintiff to purchase Greenhollow lots, which were relied upon by Plaintiff.

> Answer: We do.

The court of appeals held that since the issue did not differentiate between prediscovery and post-discovery purchases Trenholm was required to obtain a finding of reliance as to all of the lots. The special issue as submitted supports Trenholm's theory that before he became involved in Greenhollow, Ratcliff made false misrepresentations that were subsequently relied upon by Trenholm in purchasing the six lots and in obligating himself to build twelve joint venture houses. The special issue only requires a finding that prior to Trenholm's involvement in Greenhollow, Ratcliff made false representations which were relied upon. The issue did not require a finding that the misrepresentations were relied upon by Trenholm when he purchased each of the eighteen lots.

The court of appeals, because of its holding that there could be no reliance as a matter of law, found it unnecessary to reach Ratcliff's other points in support of the trial court's judgment. He is entitled to have these points considered.

■ Ratcliff argues there is no evidence to support the jury findings that the representation by Ratcliff that the trailer park would be moved was made with "purported special knowledge." We disagree. The context in which the misrepresentation was made supports a jury inference that Ratcliff had special knowledge. The representation was made at an informational meeting concerning a subdivision that Ratcliff was developing. He assumed a role of authority when he presented the Greenhollow development at the meeting. He invited questions which he said he would answer.

■ The finding of special knowledge would have been necessary if the misrepresentation was based solely on Ratcliff's opinion. *See* W. Prosser, *Law of Torts,*

§ 109 at 726, 728 (4th Ed.1971). A finding of special knowledge, however, is unnecessary to support a fraud judgment in this case. Ratcliff made misstatements of present facts which, coupled with his future prediction, justified reliance upon his opinion and transformed his statement into a representation of fact. A jury finding of recklessness is sufficient to establish a basis for misrepresentation of facts. Trenholm obtained a jury finding that the representations of fact were "made recklessly without knowledge of the truth and as a positive assertion." There is evidence to support this finding. When Ratcliff made representations knowing he did not have sufficient information or basis to support them, he made them recklessly.

■ Ratcliff also contends the judgment of the courts below is correct because there is no evidence that Trenholm exercised due diligence. Ratcliff argues Trenholm could have easily ascertained the status of the trailer park prior to the building of his houses. This point will not support the take nothing judgment. "Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care." *Isenhower v. Bell,* 365 S.W.2d 354, 357 (Tex.1963).

■ Finally, Ratcliff argues there is no evidence to support the jury findings on actual and exemplary damages. Trenholm seeks to recover only "special or consequential" damages, i.e., losses on the sales of the eighteen houses and lost profits thereon. Special damages may be recovered for losses on improvements to property purchased as a result of misrepresentation. *Collins v. Miller,* 443 S.W.2d 298, 301 (Tex.Civ.App.— Austin 1969, writ ref'd n.r.e.); *El Paso Development Co. v. Ravel,* 339 S.W.2d 360, 364 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r. e.). Ratcliff contends that, as a matter of law, Trenholm's special damages were not proximately caused by the misrepresentation and were too speculative. There is evidence to support the jury's findings that Trenholm's damages directly and naturally resulted from reliance on the misrepresentation. Several witnesses testified that the presence of the trailer park hurt the sales in Greenhollow.

■ Additionally, Trenholm's profits were not too speculative. Trenholm's business, Oxford Building, was formed in 1972. It made a ten percent profit on the houses it built in 1973 and 1975, and the president of Richardson Savings and Loan testified ten percent was the profit builders anticipated. The jury award equalled ten percent of Trenholm's costs.

■ Ratcliff argues Trenholm is not entitled to exemplary damages since the issue on malice did not require the jury to find that Ratcliff intended to injure Trenholm. A finding of intent to harm is sufficient for awarding exemplary damages. *Dennis v. Dial Finance & Thrift Co.,* 401 S.W.2d 803, 805 (Tex.1966). Conscious indifference to the rights of others is also sufficient for an award of exemplary damages. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). Ratcliff was aware prior to the draw meeting that the trailer park would be a drawback and concern the builders. So to induce them to buy lots, he falsely represented that the mobile home park had been sold and the land had been zoned commercial. This is some evidence to support a jury inference that Ratcliff made the misrepresentations with conscious disregard for the rights of Trenholm.

In conclusion, we hold that the jury verdict supports a judgment for Trenholm and that there is evidence to support the jury verdict. We find it unnecessary to discuss any of Ratcliff's other points. Ratcliff contends the cause should be remanded to the court of appeals for consideration of his insufficiency points. Ratcliff did not raise cross-points in the court of appeals on the insufficiency of the evidence. He merely stated in his reply points: "The judgment of the trial court is correct because there is no evidence, or alternatively there is insufficient evidence, to support the jury finding . . . ." Insufficient evidence points are

points which call for the reversal of the trial court judgment and remand of the cause for a new trial. Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 TEXAS L.REV. 361, 365 (1960). Ratcliff's points stating that the judgment is correct are merely no evidence points. *See Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex. 1965). Additionally, Ratcliff failed to argue the insufficiency of the evidence in his brief. Points of error must be supported by argument and authorities, and if not so supported, the points are waived. *Gulf Coast State Bank v. Emenhiser,* 562 S.W.2d 449, 452–53 (Tex.1978); *Arrechea v. Arrechea,* 609 S.W.2d 852, 855 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.).

We reverse the judgment of the court of appeals, and render judgment for Trenholm on the jury verdict for actual damages of $190,500.00 and exemplary damages of $250,000.00, with lawful interest from the date of the trial court judgment.