**L.T. FORD, Appellant,**

v.

**FLUOR ENGINEERING AND CONSTRUCTORS, INC., Joel H. Lawson, d/b/a Lawson Equipment Rental, Appellees.**

**No. 09 85 006 CV.**

Court of Appeals of Texas, Beaumont.

May 1, 1986.

Rehearing Denied May 21, 1986.

Rodney V. Steinburg, Houston, for appellant.

David E. Bernsen, Benckenstein, Norvell, Bersen & Nathan, Michael McGown, Wel-

ler, Wheelus & Green, Beaumont, for appellees.

## OPINION

BURGESS, Justice.

L.T. Ford (Ford) sustained an injury while working at the Texaco Refinery in Port Arthur, Texas. He was a dump truck driver hired by H.W. Campbell Company to haul material from a construction site. Mr. Ford was injured when a board went through the bed of his truck, striking the cab while he was seated in the driver's seat. The board was being loaded into the dump truck by an equipment operator employed by another subcontractor, Lawson Equipment Rental (Lawson) under the direction of Fluor Engineers, Inc., (Fluor) the general contractor.

The case was tried to a jury which found (1) Fluor negligent in its decision to load the boards with the tailgate of the dump truck raised, (2) such negligence was a proximate cause of Ford's injuries, (3) Lawson negligent in failing to keep a proper lookout while loading the dump truck, (4) such negligence was a proximate cause of Ford's injuries (5) the percentage of negligence should be apportioned 60% to Fluor and 40% to Lawson, and (6) that Ford should be compensated $1500.00 for past pain and suffering, $500.00 for future pain and suffering, $25,000.00 for loss of earnings in the past, $78,000.00 for loss of earning capacity in the future, and $8,000.00 for past medical expenses. The jury also found that Ford was a borrowed employee of Fluor. The jury refused to find any negligence on the part of Ford.

After the jury's verdict, Ford moved for judgment on the verdict and both Fluor and Lawson moved for judgment notwithstanding the verdict. The trial court granted both of the motions for judgment n.o.v.. The points of error allege error in refusing to grant judgment in favor of the plaintiff and granting the judgment n.o.v. in favor of the defendants.

■ To sustain the granting of a judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be viewed in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex.1983). After reviewing the evidence we can find no evidence that Lawson's employee was negligent in his lookout. It was uncontroverted that the operator could not see in the back of the dump truck when the tailgate was raised. Insofar as lookout is concerned, all any reasonable prudent operator could do under the same or similar circumstances, was to watch the load from the time it was picked off the ground until the time it was lowered into the dump truck. Lawson's operator may have been negligent in some other manner, but as to lookout, he was doing all he could do under the circumstances of the tailgate being raised. Therefore, the trial court did not err in granting that portion of Lawson's motion concerning their negligence.

■ The question of whether the dump truck being loaded with the tailgate raised constituted negligence was controverted. There is evidence to support this finding of the jury. There was testimony that it was Fluor's operating foreman who made the decision to haul this particular type load with a dump truck. Further, it was Fluor's decision to have the trucks loaded with the tailgates raised. Thus, Fluor had a duty to exercise reasonable care. *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). There was testimony that it was customary to remove the tailgates of dump trucks when loading boards of this type and that it was safer to load the boards on a flat-bed trailer rather than a dump truck with the tailgate on. This is sufficient evidence to show a deviation from the standard of care. The trial court erred in granting Fluor's motion for judgment n.o.v.

Fluor, in their brief, urge no reply points as to the jury's findings on the damage issues. Nor does Fluor urge any cross-points based upon the jury's findings of borrowed servant. Therefore, we will proceed to enter the judgment the court below should have entered.

It is THEREFORE, ORDERED, ADJUDGED and DECREED that L.T. Ford, take nothing from Lawson Equipment Rental. It is further ORDERED, ADJUDGED and DECREED that L.T. Ford have judgment against Fluor Engineering and Constructors, Inc., in the amount of $113,000.00 and for interest at the legal rate from the date of the original judgment. All costs are adjudged against Fluor Engineering and Constructors, Inc.

The Court has determined that the foregoing opinion does not meet the criteria for publication set out in *TEX.R.CIV.P. 452, sec. (b);* consequently, it is ORDERED that the Clerk shall make distribution of the opinion only to the persons specified in *TEX.R.CIV.P. 456,* but a copy may be furnished to any interested person. This opinion shall not be cited as authority. *TEX.R. CIV.P. 452, sec. (f).*

REVERSED AND RENDERED.

BROOKSHIRE, Justice, dissenting.

With respect, this dissent is filed. The majority concedes that, to properly sustain the granting of a judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings that were set aside. In considering the n.o.v. motion, all testimony, of course, must be viewed in the light most favorable to the party against whom the motion is filed. Also, every reasonable inference and intendment deducible from the evidence is to be indulged in favor of the party against whom the motion n.o.v. is urged. *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983); *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726 (Tex. 1982).

The jury found that Joel H. Lawson, d/b/a Lawson Equipment Rental, was negligent in failing to keep a proper lookout while loading L.T. Ford's dump truck. Secondly, the jury found that such negligence was a proximate cause of the occurrence in question. Thirdly, the jury found that L.T. Ford sustained damages and injuries that resulted from that occurrence. Fourthly, the jury declined to find any negligence against Ford. Finally, the jury found that Fluor Engineers, Inc.'s negligence contributed 60% to Ford's injuries and that the negligence of Lawson Equipment Rental, which proximately caused the incident and damages in question, contributed 40%. The majority concedes that Lawson's operator may have been negligent in some manner but held there was no evidence that he was negligent in failing to keep a proper lookout.

C.A. Womack was the operator of a rented track backhoe. Mr. Womack was operating the machine on the premises of Texaco Refinery located in Port Arthur, Texas. He was operating the machine for Lawson Equipment. He had been on the jobsite for about 3 months. He was digging foundations for cooling towers, heater foundations and control houses. He was operating a Drott Trackhoe, described as a big trackhoe sitting on tracks instead of on rubber tires. He described his work as removing some old board roads so that another company could come in and drive piling. Lawson's employees were instructed to dig up the timber so the other company could get started. Only dump trucks were used.

"They were working by the hour. So, instead of using flatbed trucks and having to pay the dump trucks, they wanted to load the stuff in the dump trucks and then they'd take it to the dump." These quotes are from Womack's testimony. They were digging up "bad old oily mud"; also, they were digging up "chunks of concrete". Lawson's employee, Womack, was also told to take up the old board road. Part of the board road was lapped wood—part being crossties. Some of the old oak boards were about 20 feet long. Some were 12 inches thick. Others were 6 inches thick. These were to be hauled off by being placed in

dump trucks. While these old boards were being loaded in one of the dump trucks, the accident and personal injuries in question happened.

In fact, the witness, Womack, testified it was during a particular part of the operation of loading up these dump trucks that the offending board was pushed through the bed of the truck and caused the personal injuries to Ford. We recite a particularly cogent and compelling phase of the evidence as follows:

"Q How did this accident happen?

"A Well, as I was loading them up, you scoop them up and all of this and you try to lay them in the truck on account of they are boards and some of them are sticking up. Some are sticking off the sides and in the back and all of that and you just take your machine and kind of straighten it up where none will fall off or hit anything and that's what had happened.

"I had swung over to the right side and I was swinging back over the truck to push some up on there *and evidently, one caught the back of the bucket and the next thing I knew, it hit his truck, went through his truck.*" (Emphasis added)

When a witness uses words like "and evidently", it raises a fact issue by reasonable intendment and reasonable inferences that Womack did not know as an actual, factual matter what had happened. This, inter alia, certainly raises the issue of failing to keep a proper lookout.

The witness also testified as follows:

"Q You say you were swinging from the right to the left?

"A Yes, sir.

"Q Were you in the process of loading some boards at that point?

"A No, sir. I was straightening up the load.

"Q So, you had already loaded up and you were straightening it up?

"A Yes, sir.

"Q *How loaded was the truck?*

"A *Well, it's hard to say.* They are different diameter boards there and you just—*you just did the best you could,* what you thought was safe and he could dump." (Emphasis added)

Hence, when asked about how loaded the truck was, the witness answered: "Well, it's hard to say." This too, with other evidence, raises the issue of failing to keep a proper lookout. We also find in the record:

"Q Let me ask it this way: *Can you estimate how many scoops of boards you had put into the truck?*

"A *No, sir, I couldn't tell you on that.*"

This witness could not estimate how loaded the truck was. The jury found in effect that he did not observe how many scoops of boards he had already put into the truck when the offending board hit the dump truck, went through the truck and injured Ford. But there is more:

"Q Now, where were you in relationship to the truck?

"A He backed right straight up to me. *That was the only place he could get.*

"Q The particular boards that you were trying to straighten up, do you remember which direction they were facing?

"A That's what I'm saying. *It's like a bowl of spaghetti.* You don't drop them. You try to set them in there, but *when they fall, they slide out of the bucket. They are going every direction.* Like I say, some of them is twenty foot long, some of them is three foot, some of them—as you're digging them up, they break." (Emphasis added)

Thus, this operator did not see or observe in which direction the boards were facing. Hence, he did not reckon with this potentially dangerous condition. The jury could have properly considered this evidence on the lookout issue.

Of course, there is other evidence in the record supporting the jury finding on lookout. As I view the entire record, it raised a jury issue as to proper lookout. Inasmuch

as Womack knew the boards would go every which way, he compared them to a "bowl of spaghetti." That is strong, probative evidence to sustain the jury's finding of proximate cause based on failing to keep a proper lookout.

Later, this same witness, Womack, testified that when he was sitting in the cab of the trackhoe, he could not see into the back of the dump truck. If he could not see what was going on in the back of the dump truck and if he could not see what was going on inside the bed, it is apparent and logical that the jury could rationally and reasonably have taken the position, as they did in their verdict, that the operator was not keeping a proper lookout.

Also in the record:

"Q Now, when you're sitting in the cab of your trackhoe, can you see into the back of the dump truck?

"A No, sir. You're about eye level with it.

"Q *So, you don't know what's going on inside the bed?*

"A *No, sir.*" (Emphasis added)

The operator also conceded that he did not use a spotter to get a better lookout.

Arguably, the majority's position can be interpreted as holding that when an operator, situated as was Womack, could not see what was happening to the boards that he was loading onto a dump truck, then his inability to see excused him from the duty of keeping a proper lookout. Respectfully, I maintain that such a holding is both illogical and unsound.

I would hold that the granting of the motion notwithstanding the verdict, in favor of Lawson Equipment Rental against Ford, was reversible error.

This dissent, I deem, meets the requirements of *TEX.R.CIV.P. 452(b)(c)* (Vernon 1985), making it a dissent for publication. Hence, under *Rule 452(c)*, since this dissent is to be published, then the "majority opinion shall be published as well."