Affirmed and Memorandum Opinion filed April 20, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00143-CV

___________________

 

In the interest of j.w.h. and a.l.h.



 



 

On
Appeal from the County Court No. 3

Galveston County,
Texas



Trial Court Cause No. 07FD2806

 



 

 

MEMORANDUM OPINION

            Suzanne Williams appeals the trial court’s order
modifying the parent-child relationship and appointing Jeffrey Hancher the sole
managing conservator of their two children.  In her first issue, Williams
challenges the trial court’s jurisdiction over the modification proceeding.  In
her remaining issues, she asserts the trial court abused its discretion in (1)
retaining the case, allowing Hancher to “forum shop” and obtain relief to which
he was not entitled; (2) modifying the out-of-state custody order because
Hancher did not present legally and factually sufficient evidence to show that
there was a change in circumstances sufficient to warrant modification and that
it was in the best interest of the children to appoint Hancher as sole managing
conservator and Williams as possessory conservator; and (3) construing the
vague terms of the out-of-state custody order against Williams and concluding
that Williams repeatedly denied or interfered with Hancher’s possession of the
children.  We affirm.

Background

            In
July 2003, Williams and Hancher were divorced in Maryland.  The parties were
awarded joint legal custody of their two children, J.W.H. and A.L.H. Williams
was the primary custodial parent, with the right to designate the residence of
the children.  In May 2005, Williams sought modification of the original
custody order because she planned to relocate to Texas with her then fiancé. 
In June 2006, the Maryland court awarded Williams primary residential custody
of the children and permitted her to take the children to Texas; the trial
court additionally entered an order detailing Hancher’s visitation rights. 
Williams and the children relocated to Texas in August 2006.  

On October 25, 2007, Hancher filed a petition to
modify the out-of-state custody order in Galveston County, alleging a change in
circumstances.  In December, Williams filed a plea to the jurisdiction and
general denial.  In the alternative, she asked the Galveston County judge to
stay the proceedings while a custody action was filed in the Maryland court. 
Williams then filed a modification proceeding in the Maryland court.[1]  On March 20,
2008, the Maryland court entered an order dismissing Williams’s modification
proceeding and finding that Texas was the “more appropriate forum” to decide
issues involving modification of custody and visitation of the children.[2]  Williams then
filed a counter-petition to modify the parent-child relationship in Galveston
County on May 22, 2008.[3] 


In July 2008, Hancher filed a petition for a writ of
habeas corpus in Galveston County, seeking to have the children returned to him
because Williams refused to return them as required under the Maryland orders. 
After a hearing, the trial court ordered Williams to return the children to
Hancher, ordered Williams to reimburse Hancher for his travel expenses, and awarded
Hancher attorney’s fees.  The children remained with Hancher for the remainder
of the court-ordered visitation, but returned to Williams for the start of the
2008 school year.

The modification proceeding was tried to the court on
December 5, 2008.  At the hearing, Hancher’s mother, Betty, testified.  She
described several occasions in which Williams appeared in Maryland while the
children were in Hancher’s possession seeking visitation with the children.  According
to Betty, Williams came to her place of employment on three separate occasions
looking for the children.  She also stated that she was present on several
occasions when Hancher was unable to talk on the telephone to the children when
they were with Williams.  She testified to her availability to assist Hancher
with the children should the trial court name him sole managing conservator;
she stated that she is retired and both she and Hancher’s father live in
Hancher’s home.  Betty further explained that Hancher has a close relationship
with his children and described the schools and church the children would
attend should they relocate to the Maryland area.

Hancher testified and described various changes in
circumstances the children have experienced since the Maryland court’s 2006
order.  He explained that the children have moved to Texas, started new
schools, gotten a new stepfather, and moved to a new home.  He also detailed
the circumstances surrounding the habeas corpus proceeding that occurred in 2008. 
After the habeas proceeding, he described Williams’s actions as follows:

Well, she was in Maryland about — she was on a flight about
three hours after us and then I know that within a day or two, I’d have to look
at the exact dates, but within two days she was already sending e-mails
demanding the kids, saying that, you now, she’s not doing anything wrong.  It
was a pretty long-winded e-mail that time.

He further detailed Williams’s behavior during his
periods of possession in the summer of 2007 after Williams moved to Texas with
the children:

What would generally happen is she would either call at
6:55 to 7:00 in the morning, which I just wouldn’t answer the phone, then.  And
she would come by the house, knock on the door.  And then I believe after that
she would head right over to my mom’s work and then she would, after she didn’t
find the kids there, she would come back to my house.  We weren’t there the
second time.  We were going on a hike or doing something because I didn’t want
the confrontation.  So there’s a lot of 7:00 a.m. hikes we were taking just so
we wouldn’t have to be there.

He provided copies of emails
between him and Williams, which described difficulties he had in both
exercising his summer visitation without her involvement and in visiting the
children in Texas.[4] 


According to Hancher, Williams had a pattern of
scheduling extra-curricular activities for times he planned to come to Texas to
visit the children; he provided a chart detailing the occasions he attempted to
visit the children in Texas, the date he notified Williams of his impending
visit, and the actual amount of time he was able to spend with the children
when he was in Texas.  Hancher testified that, other than the week after
Hurricane Ike, every other time he has made arrangements to come to the Houston
area to visit the children, Williams scheduled events for the children that interfered
with his visitation.  

He described the difficulties he has had in speaking
with the children on the telephone after the parties entered into a Rule 11
agreement regarding telephone contact.  According to Hancher, Williams refused
to follow the terms of the Rule 11 agreement regarding telephone contact.  He
testified that he had not been provided important medical information regarding
the children, including Williams’s decision to take his son, J.W.H., to a
psychologist.  In addition, he stated that Williams was required to provide him
copies of report cards and progress reports under the terms of the Maryland
custody order, but she either did not provide them at all, or failed to provide
them in a timely fashion.  

Hancher testified that, if he were awarded primary
custody of the children in Maryland, he would do his best to make the children
available to Williams when she visits.  He emphasized that he would not
interfere with Williams’s possession of the children.  He explained that all
the extra-curricular activities the children were involved with in Texas were
also available in the Maryland area and that the children have numerous
relatives and cousins who live within a few hours of his residence in Maryland. 
Finally, in response to his attorney’s question regarding any possibility that
he and Williams would be able to work together, cooperate, and make decisions
for the children, Hancher stated, “This has been getting worse and worse over
the last five years, and . . . even now we have . . . a Rule 11 agreement, very
simple guidelines from it that she won’t abide by. . . .  And I think somebody
needs to be able to make the decisions. . . .”

  Williams described events rather differently than
Hancher.  She testified that, although she did travel to Maryland frequently
while the children were visiting Hancher, her Maryland attorney had advised her
that she was entitled to “reasonable access” to the children when they were
visiting their father.  She explained that she now understands that she is not
permitted access to the children when Hancher has possession of them.  However,
Williams also stated that the majority of the times she attempted to visit the
children when they were in Maryland with their father, Hancher actually invited
her to do so.  She explained that, “[v]erbally he would say, ‘Come down,’ and
then send a[ contradictory] email[.]”  

Williams described the activities in which the
children were involved, including both school-related and extracurricular
activities.  She testified that she provided Hancher with schedules for all the
extracurricular activities in which the children were involved, but was unable
to locate the email in which she gave him that information.  She also stated
that she did not deny Hancher access to the children when he came to the
Houston area, asserting that she’s “always made a point to give access to the
children when he travels down.”  According to Williams, Hancher was invited to
attend extra-curricular events with the children when he came to the Houston area
to visit, but declined.  Williams testified that she did not deliberately
schedule events to conflict with Hancher’s periods of possession and that she
refused to permit Hancher to keep the children overnight when he came to visit
because it would disrupt their schedules.  

Williams stated that she had not refused to allow
Hancher telephone contact with the children.  Instead, according to Williams,
Hancher frequently interfered with her telephone contact with the children by
refusing to answer her calls, supervising the children during the
conversations, and distracting the children when she was talking to them.  Williams
expressed concern that Hancher seemed unwilling to recognize that their son,
J.W.H., had been diagnosed with dysgraphia and ADHD.  She testified that she
always provided Hancher copies of report cards and progress reports, but that
Hancher often refused to accept them.  

According to Williams, the problems she and Hancher
have had regarding the children were generated by Hancher.  She stated that
Hancher has been “disagreeable” with everything, from getting special
assistance for their son in school to extracurricular activities.  She also
testified that she has never done anything intentionally to “alienate” the
children from their father and that Hancher had at least twice threatened to
keep the children longer than he was permitted under the custody order.  She
stated that Hancher was “notorious” for limiting her access to the children
when he had possession of them, limiting her telephone access to them, and
behaving in a “very controlling” manner.  According to Williams, the children
were “flourishing” in Texas, and, other than entering a standard Texas
possession order, she requested that the custody situation remain the same.

Williams also presented several other witnesses, all
of whom testified that she was a very good mother and a trustworthy person. 
None of these witnesses, however, knew Hancher or had observed any interactions
between Hancher and Williams or between Hancher and the children.  

On January 28, 2009, the trial court entered an order
naming Hancher sole managing conservator of the children and naming Williams
possessory conservator.  The trial court entered a standard possession order
and ordered Williams to pay $300 per month in child support.  Both parents were
permanently enjoined from making disparaging remarks about the other parent or
that parent’s family and discussing this litigation with or in the presence of
the children.  On February 3, 2009, the trial court made the following findings
of fact:

·       
The Maryland court has declined jurisdiction over this matter.

·       
The circumstances of the children, a conservator, or other party
affected by the order to be modified have materially and substantially changed
since the date of rendition of the order to be modified.

·       
Suzanne Williams has repeatedly denied and/or interfered with
possession of the children by [Hancher].

·       
Suzanne Williams has repeatedly and intentionally acted to harm
the relationship between [Hancher] and the children.

·       
Suzanne Williams has repeatedly demonstrated that she is not able
to put the best interests of the children first.

·       
Suzanne Williams has repeatedly failed to share relevant
information with [Hancher] concerning the children and has intentionally
scheduled activities to interfere with [Hancher]’s possession of the children.

·       
It is in the best interest of the children that Jeffrey William
Hancher be appointed the sole managing conservator of the children and that
Suzanne Williams be appointed the possessory conservator of the children.

Based on these findings, the
trial court concluded that “Hancher should be named sole managing conservator
of [J.W.H.] and [A.L.H.], and . . . Williams should be named possessory
conservator of [the children].”  Williams timely appealed the trial court’s
custody modification order.

Jurisdiction

In her first issue, Williams asserts that the trial
court lacked jurisdiction over this matter because, at the time Hancher filed
his petition to modify in Galveston County, the Maryland court retained
jurisdiction over the matter.  We review legal questions, such as those
involving subject matter jurisdiction, de novo.  See Tex. Natural Resource
Conservation Comm’n v. Davy, 74 S.W.3d 849, 855 (Tex. 2002); Saavedra v.
Schmidt, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.).

Except as provided in the emergency jurisdiction
statute,[5]
a Texas court may not modify a child custody determination made by a court of
another state unless the Texas court has jurisdiction to make an initial
determination and (1) the court of the other state determines that it no longer
has continuing exclusive jurisdiction or that the Texas court is the more
convenient forum or (2) a court of Texas or another state determines that the
child, the child’s parents, and any person acting as a parent do not presently
live in the other state.  Tex. Fam. Code
Ann. § 152.203 (Vernon 2008); see also In re Forlenza, 140 S.W.3d
373, 375 n.3 (Tex. 2004) (orig. proceeding); Saavedra, 96 S.W.3d at
541.  Williams does not dispute that a Texas court would have had jurisdiction
to make an initial determination; instead, she contends that, at the time the
modification proceeding was filed, the Maryland court retained exclusive,
continuing jurisdiction over the matter.  But, as noted above, before the Texas
court modified the child custody determination made by the Maryland court, the
Maryland court determined that Texas was a more appropriate forum to decide the
issues raised in this case.  See Tex.
Fam. Code Ann. §§ 152.203(1), 152.207(a); cf. Saavedra, 96 S.W.3d
at 541 (stating that, absent the issuing court’s relinquishment of exclusive
continuing jurisdiction, the Texas court was without jurisdiction to modify
the issuing court’s custody orders).  Thus, we overrule Williams’s first issue.

In her second issue, Williams asserts that the trial
court abused its discretion in retaining this case because it allowed Hancher
to “forum shop” and obtain relief to which he was not entitled.  First, we note
that Williams provides no legal authority in support of this argument.  See Tex. R. App. P. 38.1(h); Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983) (“Points of error must be
supported by argument and authorities, and if not so supported, the points are
waived.”).  Rather than arguing that the trial court abused its discretion in
this section of her brief, Williams focuses on Hancher’s behavior; for example
she states, “Hancher’s behavior shows that he deceived the Texas court into
granting him relief which the Maryland courts had refused to give him in the
2003 order, the 2006 order, and the 2007 appellate opinion.”  Moreover, the
record supports the trial court’s finding that the Maryland court declined
jurisdiction in favor of the Texas court in this case.  Under these
circumstances, we cannot say the trial court abused its discretion in
“retaining” this case, and we overrule her second issue.

Modification

A.        Standard of
Review

Because a trial court has
broad discretion to decide the best interest of a child in family law matters
such as custody, visitation, and possession, we review a decision to modify
conservatorship for a clear abuse of that discretion.  See Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  A trial court abuses its
discretion when it acts arbitrarily or unreasonably, or when it clearly fails
to correctly analyze or apply the law. See In re D.S., 76 S.W.3d 512,
516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Under the abuse-of-discretion
standard, legal and factual sufficiency of the evidence are not independent
grounds of error, but are factors in assessing whether the trial court abused
its discretion.  See id.

B.        Change in
Circumstances and Best Interest of Children

            In her third and
fourth issues, Williams asserts that the trial court abused its discretion in
modifying the Maryland custody order because Hancher failed to present legally
and factually sufficient evidence to show a change in circumstances and that
the modification order was in the best interest of the children.  A trial court
may modify a conservatorship order only if modification would be in the
children’s best interest and “the circumstances of the child, a conservator, or
other party affected by the order have materially and substantially changed”
since the previous order.  Tex.  Fam. Code
 Ann. § 156.101 (Vernon  2008).  

In deciding whether a material and substantial change
of circumstances has occurred, a trial court is not confined to rigid or definite
guidelines.  In re A.L.E., 279 S.W.3d 424, 429–30 (Tex. App.—Houston
[14th Dist.] 2009, no pet.); In re Z.B.P., 109 S.W.3d 772, 779
(Tex.App.—Fort Worth 2003, no pet.).   Such a change may include (1) the marriage
of one of the parties, (2) poisoning of a child’s mind by one of the parties,
(3) change in the home surroundings, (4) mistreatment of a child by a parent or
step-parent, or (5) a parent’s becoming an improper person to exercise custody.
 In re A.L.E., 279 S.W.3d at 428–29.  Additionally, a course of conduct
pursued by a managing conservator that hampers a child’s opportunity to
favorably associate with the other parent may suffice as grounds for redesignating
managing conservators.  See In re Marriage of Chandler, 914 S.W.2d 252,
254 (Tex. App.—Amarillo 1996, no writ); Gunther v. Gunther, 478 S.W.3d
821, 829 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref’d, n.r.e.).  

The best interest of the children is always of
paramount importance in making any custody determination.  See Tex. Fam. Code Ann. § 153.002; In re
V.L.K., 24 S.W.3d 338, 342 (Tex. 2000).  A court may use the following
non-exhaustive list of Holley factors to determine the children’s best
interests:  (1) the desires of the children; (2) the emotional and physical
needs of the children now and in the future; (3) the emotional and physical
danger to the children now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these
individuals to promote the best interest of the children; (6) the plans for the
children by the individuals seeking custody; (7) the stability of the home; (8)
the acts or omissions of the parent that may indicate that the existing
parent-child relationship is not proper; and (9) any excuse for the acts or
omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex.
1976).  In the context of custody modification, other factors to be considered
include the children’s need for stability and the need to prevent constant litigation
in child-custody cases.  In re V.L.K., 24 S.W.3d at 343.

Our record does not contain any information regarding
several of the Holley factors.  For example, there is no information
regarding the desires of the children.  Further, the record contains little
information regarding any programs available to assist Williams or Hancher in
promoting the best interest of the children.  But as detailed above, the record
reflects that, since the move to Texas, Hancher had numerous problems
exercising his visitation rights with the children.  The record additionally reflects
that Williams repeatedly attempted to interfere with Hancher’s periods of
possession of the children.  Further, Williams has not challenged the following
factual findings:

·       
[Williams] has repeatedly and intentionally acted to harm the
relationship between [Hancher] and the children.

·       
[Williams] has repeatedly demonstrated that she is not able to
put the best interests of the children first.

·       
[Williams] has repeatedly failed to share relevant information
with [Hancher] concerning the children and has intentionally scheduled
activities to interfere with [Hancher]’s possession of the children.

These unchallenged factual
findings are binding on this court, unless the contrary is established as a matter
of law or there is no evidence to support them.  See McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986); Raman Chandler Props., L.C. v. Caldwell’s
Creek Homeowners Ass’n, Inc., 178 S.W.3d 384, 390 (Tex. App.—Fort Worth
2005, pet. denied).  Hancher’s testimony, summarized above, supports these
findings. 

We conclude that Williams’s behavior hampered the
children’s opportunities to favorably associate with Hancher.  See Chandler,
914 S.W.2d at 254.  Further, the unchallenged findings support the trial
court’s determination that a material and substantial change in circumstances
existed and that the modification was in the best interest of the children.[6]  Thus, the trial
court did not abuse its discretion in modifying the Maryland custody order, and
we overrule Williams’s third and fourth issues.

C.        Construction of
Maryland Order

            In her fifth and
final issue, Williams complains that the trial court abused its discretion in
construing the “vague terms of the Maryland court order” against her and
concluding that she repeatedly denied or interfered with Hancher’s possession
of the children.  Williams has cited no legal authority in support of this
issue.  We additionally note that the Maryland court stated in its custody
order:

Although there is always some real change and potential
disruption of any children’s social lives when they are relocated, in this case
that change will be temporary and minimal if all parties work together to
minimize and cushion it by maximizing access and communication by and with the
children and the non-custodial parent, Mr. Hancher.  This puts a special burden
and responsibility on [Williams] to facilitate this contact.

(emphasis added).  As detailed
above, Hancher described the problems he had in exercising his visitation with
the children and Williams’s interference with his periods of possession and his
telephonic contact with the children.  Under these circumstances, we cannot say
the trial court abused its discretion in finding that Williams repeatedly
denied or interfered with Hancher’s possession of the children.  We therefore
overrule Williams’s fifth issue.

Conclusion

            Having overruled
each of Williams’s issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Frost, and Brown.









[1] Although no copy of her
Maryland petition is included in the record, the Maryland order dismissing her
petition is part of the record.





[2] According to the
Galveston court’s docket sheet, on March 14, 2008, the Galveston judge spoke
with the judge of the Maryland court and informed him that this case was
pending in Texas.  





[3] Williams also filed a
motion for enforcement of the Maryland court’s child support order, alleging
that Hancher had failed to provide numerous court-ordered support payments,
which was served on Hancher when he appeared for a June 17, 2008 hearing on
temporary orders set by Williams.  Williams’s attorney passed this hearing, and
Williams later non-suited this enforcement proceeding.





[4] Hancher described a
particular incident in February of 2007 when he had taken the children for a
long weekend at Disney World in Orlando, Florida.  Hancher stated that he had
purchased tickets for the children and him to fly from Orlando to Houston. 
Without Hancher’s permission or knowledge, Williams’s husband, Brian Chance
Williams, an employee of Southwest Airlines, changed the children’s
reservations to an earlier flight from Orlando to Houston and changed Hancher’s
reservations from Orlando to Houston to a flight from Orlando to Baltimore,
Maryland.  Hancher notified Southwest Airlines about this change of
reservations, and Southwest Airlines personnel changed the flights back to his
original reservations.  Brian Williams corroborated Hancher’s description of
this incident.





[5] Tex. Fam. Code Ann. §
152.204.





[6] Williams states in her
brief: 

The entire argument under
the legal and factual sufficiency challenges hangs on Jeffrey Hancher’s
credibility, as his mother is an interested witness and he provided no
disinterested witnesses.  If Jeffrey Hancher is credible, then his version of
the circumstances surrounding the custody issues should stand, and the Court
should overrule Suzanne Williams’s points challenging the sufficiency of the
evidence to support the modification.  But if Jeffrey Hancher is not credible,
the Court should reverse the trial court’s judgment.

Yet, the trial court, as factfinder, was the sole
judge of the credibility of the witnesses’ testimony and the weight to be given
to their testimony.  See City of Keller v. Wilson, 168 S.W.3d 802, 819
(Tex. 2005).  By its findings, the trial court indicated that it found
Hancher’s testimony to be more credible than Williams’s.  Further, although Williams
suggests that the testimony of the “disinterested” witnesses she presented
should be given significant weight, none of these witnesses had ever observed
any interactions between Hancher and the children, or between Williams and
Hancher.