**Opinion filed April 22, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00224-CV

_____

## RAY ATHEY, A/K/A RAY D. ATHEY AND BELINDA ATHEY, Appellant

## V.

## MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER, ITS SUCCESSORS AND ASSIGNS, Appellee

**On Appeal from the 414th District Court**

**McLennan County, Texas**

**Trial Court Cause No. 2008-477-5**

### O P I N I O N

Ray Athey, a/k/a Ray D. Athey and Belinda Athey sued Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for Lender, Its Successors and assigns, for fraud in connection with a home equity loan. MERS filed a motion for summary judgment. The trial court granted that motion and found that the Atheys were in default on a promissory note, that MERS was the beneficiary of a deed of trust securing their note, and that MERS was entitled to proceed with nonjudicial foreclosure. We affirm.

## I. *Background Facts*

The Atheys executed a promissory note payable to Decision One Mortgage Company, LLC. The note was secured by 2.5057 acres, and the Atheys executed a deed of trust that named MERS as Decision One's nominee and the mortgagee. The note was entitled:

**TEXAS HOME EQUITY NOTE**
**(Cash Out – Adjustable Rate – First Lien)**
**(LIBOR Six-Month Index (As Published in the Wall Street Journal) – Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY**.

In contrast to this language, the Atheys contended that an unnamed representative of Decision One told them at closing that the note had a fixed interest rate. The Atheys corroborated this contention with an affidavit from a disinterested person who was also present at closing.

Two years later, Decision One raised the interest rate from 7.79% to 10.79%.[1] The Atheys became delinquent, and HomEq Servicing Corporation, as servicer for MERS, notified the Atheys that, if their delinquency was not cured, it would accelerate the note. The Atheys were unable to do so, and MERS accelerated the note and initiated foreclosure proceedings. The Atheys then filed this suit.

## II. *Issues*

The Atheys challenge the summary judgment with two issues, contending that the trial court erred because there was a material question of fact on their fraudulent inducement cause of action and because MERS failed to establish that it was the owner and holder of the note.

## III. *Discussion*

A. *Standard of Review.*

Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in

---

[1]The note established a yearly interest rate of 7.79% but provided that "[t]he interest rate I will pay may change on the **1ST** day of **SEPTEMBER, 2007,** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a 'Change Date.'" The interest rate was to be calculated by adding 6.79% to the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market. 10.79% represented the largest permissible interest rate that could be charged on September 1, 2007, but the rate could continue to increase 1% every six months until it reached 13.79%. The interest rate could never be less than 7.79%.

light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

B. *Fraudulent Inducement.*

To establish fraud, a claimant must prove: (1) that a material representation was made; (2) that the representation was false; (3) that, when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth as a positive assertion; (4) that the speaker made it with the intention that it should be acted upon by the claimant; (5) that the claimant acted in reliance upon it; and (6) that the claimant thereby suffered injury. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

The Atheys contended that they were defrauded when the Decision One representative misrepresented that the interest rate was fixed. MERS moved for summary judgment on this claim, arguing that the note fully disclosed that the interest rate was variable. The Atheys do not dispute that the note unambiguously provided for an adjustable interest rate but contend that, absent proof of their actual knowledge, the rate was variable (knowledge which cannot be inferred merely from what they would have learned had they read the note), testimony that the representative said the interest rate was fixed is sufficient to preclude summary judgment. The Atheys rely upon *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983), for the proposition that, "[w]here one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care."

*Trenholm* involved a common-law fraud action based upon oral misrepresentations made by a local developer to home builders during a meeting designed to solicit their participation in a new subdivision. The developer told the builders that a nearby mobile home park would be closed and the site bulldozed so that, by the time of the subdivision's grand opening, "it will be like there's never been a park there." *Id.* at 929. One of the builders thereafter built eighteen

3

houses in the subdivision. The mobile home park was not closed by the time these houses were completed, the subdivision did poorly, and the eighteen houses were sold at a loss. *Id.* The jury found that the developer made a material misrepresentation and that the builder detrimentally relied upon this misrepresentation. The developer argued that this was insufficient to constitute fraud because there was no evidence that the builder exercised due diligence and that he could have easily ascertained the status of the trailer park prior to building any homes. *Id.* at 933. The supreme court rejected this argument, holding that proof of due diligence was not an element of detrimental reliance. *Id.*

*Trenholm* makes clear that the Atheys were not required to independently investigate the Decision One representative's statement before relying upon it. But does this mean that they could rely upon an oral statement clearly inconsistent with conspicuous provisions of the note? The Atheys respond positively and direct us to *Amouri v. Sw. Toyota, Inc.*, 20 S.W.3d 165 (Tex. App.—Texarkana 2000, pet. denied). In that case, the plaintiff was led to believe that he was signing purchase papers for a car, but he instead signed a lease agreement. The Texarkana Court held that, when the execution of a contract is procured by fraud, misrepresentation, or concealment, there is no assent and, therefore, no binding contract. *Id.* at 169. The Atheys reason that, because the Decision One representative's statement induced them to sign the note, they could rely upon it even if it was contradicted by a conspicuous note provision.

The Atheys read too much into *Amouri*. Even though the Texarkana Court voided the lease agreement because of a misrepresentation, it specifically noted that "a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the agreement or that he did not understand the meaning of the language used." *Id.* Thus, *Amouri* does not stand for the proposition that all pre-execution oral statements that are inconsistent with the terms of the written agreement are sufficient to vitiate assent. Instead, *Amouri* would require a determination of whether the misrepresentation was such that there was never a meeting of the minds.

Other courts have taken a slightly different approach by considering whether a party could justifiably rely upon an oral statement. In this instance, courts have held that reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement is unjustified as a matter of law. *See, e.g., DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858-59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (one who enters into a written contract while relying on a contrary oral agreement

4

does so at its peril and may not pursue a fraudulent inducement claim when the other party asserts its contractual rights).[2]

Recent Texas Supreme Court decisions suggest that hard and fast rules for when contracting parties may justifiably rely upon oral representations will not always be easily ascertainable. *See, e.g., Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008); and *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997).[3] But the court has ratified the concept that, to vitiate a contract, "the fraud must be something more than merely oral representations that conflict with the terms of the written contract." *Swanson*, 959 S.W.2d at 179 (citing *Distrib. Inv. Co. v. Patton*, 110 S.W.2d 47, 48 (Tex. 1937)).

Even if bright-line rules for determining whether reliance is justified are sometimes wanting, Texas courts have been more stringent in their analysis of fraudulent inducement claims when the contract is a promissory note. *See Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 493 (Tex. 1978) (to prevail in asserting fraud as an affirmative defense to a promissory note, the defendant must show some "trickery, artifice, or device"); *see also Simmons v. Compania Financiera Libano*, 830 S.W.2d 789, 791 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (the clear terms of a negotiable instrument cannot be varied by a parol agreement that purports to change the obligor's responsibilities); *Tripp Vill. Joint Venture v. MBank, Lincoln Ctr., N.A.*, 774 S.W.2d 746, 749 (Tex. App.—Dallas 1989, writ denied) (defendant could not prove fraud by extrinsic evidence until it demonstrated that it was tricked into executing the security agreement). The policy behind this heightened proof requirement is to avoid uncertainty and confusion in the law of promissory notes. *Broaddus*, 569 S.W.2d at 492. This is particularly appropriate when one considers that they are frequently negotiable instruments.

The Atheys' evidence does not establish the trickery, artifice, or device necessary to void a promissory note. The oral representation upon which they rely is directly, clearly, and conspicuously contradicted by the note's heading and introductory paragraph. We do not hold that a fraudulent inducement cause of action can never lie merely because the operative oral

---

[2] *See also Wuertz v. Nationwide Life Ins. Co.*, No. 01-07-00272-CV, 2009 WL 1331860 (Tex. App.—Houston [1st Dist.] May 14, 2009, no pet.) (plaintiff could not rely upon statement that life insurance policy required only one $300,000 premium payment when policy and policy application clearly indicated that it required an annual $300,000 premium payment).

[3] For example, in *McAllen*, the court instructed lower courts faced with a waiver-of-reliance provision in a contract to consider whether: (1) the terms of the contract were negotiated, rather than boilerplate, and if the parties specifically discussed the issue that has become the topic of the subsequent dispute during their negotiations; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matter; and (5) the release language was clear. 268 S.W.3d at 60.

representation is contradicted by a provision within the contract. But in this instance, the Atheys could not reasonably rely upon an oral representation that was so plainly contradicted. The trial court did not err by granting MERS's motion for summary judgment. Issue One is overruled.

C. *Owner and Holder.*

The Atheys next complain that the trial court erred because MERS failed to prove that it was the owner and holder of the note. The note is payable to the order of Decision One. The deed of trust designated MERS as the mortgagee and as Decision One's nominee. MERS attached the affidavit of Noriko Colston to its motion for summary judgment. Colston testified that she was the assistant secretary and custodian of records for HomEq, that HomEq was a mortgage servicer for MERS, and that it was responsible for the day-to-day management of the Atheys' note. She authenticated the note, deed of trust, notice of default and intent to accelerate, and the Atheys' payment history as HomEq's business records. She also testified that Decision One was the owner and holder of the note.

The Atheys did not object to this affidavit testimony, but Ray Athey testified in his affidavit that, "[b]ased upon my information and belief, [MERS] is not the owner of the note in question and does not have authority to bring suit on the note and foreclose under the deed of trust." On appeal, the Atheys argue that Colston had no personal knowledge of any of the underlying documents because they were created by a third-party company. Because they did not object to Colston's affidavit, they may not challenge her personal knowledge on appeal. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (a party must object in writing to formal deficiencies in the summary judgment proof or waive the objection). Form defects include the affiant's lack of personal knowledge. *Stewart v. Sanmina Tex. L.P.,* 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.). Moreover, the mere fact that Colston was employed by HomEq does not preclude her testimony. *See Houston Shell & Concrete Co. v. Kingsley Constructors, Inc.*, 987 S.W.2d 184, 186 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (TEX. R. EVID. 803(6) does not require the affiant to be the creator of the document or even an employee of the company keeping the record but does require that the affiant establish that they or others in their company knew of the events recorded on the third-party documents).

Even if the Atheys' evidentiary challenge had been preserved below, on appeal, the Atheys argue that there is no evidence establishing that MERS is the owner and holder of the note. MERS never contended that it owned or held the note. The documents and Colston's affidavit establish that Decision One was the owner and holder. And even if Ray Athey's

6

affidavit and their appellate issue are read as a challenge to MERS's authority to bring this suit, the deed of trust clearly gives MERS that authority. The trial court did not err by holding that MERS was entitled to proceed with nonjudicial foreclosure. Issue Two is overruled

## IV. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


April 22, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.