

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00330-CV

LUREA HORNBUCKLE AND                                              APPELLANTS
WILLIAM HORNBUCKLE, SR.
ESTATE

V.

COUNTRYWIDE HOME LOANS,                                              APPELLEES
INC. AND MASSACHUSETTS
MUTUAL LIFE INSURANCE
COMPANY

-----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

----------

This is an appeal from the trial court's summary judgment in favor of appellees Countrywide Home Loans, Inc. and Massachusetts Mutual Life Insurance Company dismissing with prejudice all of the claims asserted against

---

[1]*See* Tex. R. App. P. 47.4.

them by appellants Lurea Hornbuckle and the estate of William Hornbuckle, Sr. (collectively, appellant) and allowing appellees to judicially foreclose their loan on appellant's residence. We affirm.

**Background**

Appellant Lurea and her now-deceased husband, William, purchased a home in Arlington on March 1, 2002. To purchase the home, they obtained an FHA loan from Principal Residential Mortgage, Inc. (PRMI). The Hornbuckles signed a note and deed of trust both dated March 1, 2002. The lender was identified in both documents as PRMI, but the beneficiary in the deed of trust is Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for PRMI.

In late 2003 or early 2004, servicing of the loan was transferred to Countrywide. Nothing in the record shows that the Hornbuckles were informed that PRMI sold the note and deed of trust to Massachusetts Mutual. But a letter to the Hornbuckles from Countrywide shows that the Hornbuckles knew PRMI had transferred servicing of the loan as of at least February 10, 2004 and that they knew Countrywide was the new servicer as of at least March 29, 2004. Countrywide began crediting payments from the Hornbuckles in March 2004 although the Hornbuckles expressed their dissatisfaction with the transfer of the servicing and questioned whether PRMI had transferred, or Countrywide had credited, their entire escrow account. Countrywide's records show that the

2

March 2004 payment was credited to the January 2004 note installment due, but because PRMI transferred only $21.60 for the escrow account and Countrywide paid the Hornbuckles' home insurance in March, the escrow account had a negative balance at that time. Accordingly, the Hornbuckles were two months behind in payments until January 2005, when they brought their account current. However, they still had a negative escrow balance, and they failed to make their February 2005 payment. After that, they were at least one month past due on all of their payments throughout 2005. Countrywide sent the Hornbuckles a letter on November 16, 2005, telling them it would accelerate the note if they did not cure the default by paying $6,417.49 on or before December 21, 2005. Countrywide did not foreclose at that time.

William died intestate[2] in late 2005, and Lurea filed a petition for bankruptcy on May 1, 2006. Throughout 2006 and 2007, Lurea fell further and further behind in making payments on the note; Countrywide's records show that she stopped making payments altogether in June 2007. Lurea's bankruptcy was dismissed on October 11, 2007 without discharging any debts that were outstanding at that time.

On September 24, 2007, appellant sued appellees in the 17th District Court of Tarrant County for DTPA violations and fraud, seeking an injunction

---

[2]Appellant does not contest that William died intestate. Under the probate code, his interest in the property immediately vested in his heirs at law subject, however, to the outstanding debt. *See* Tex. Prob. Code Ann. §§ 37, 38 (Vernon 2003).

against them foreclosing on the residence. She accused appellees of wrongful acceleration of the note, wrongful debt collection practices, and wrongful refusal to give her an accurate amount required to cure the default. Appellant did not ask for a hearing, and the trial court never issued an injunction.

On December 5, 2007, Countrywide sent appellant a second letter stating its intention to accelerate the note if appellant failed to cure a default of now $35,839.39[3] by December 25, 2007. Instead of attempting to foreclose, however, Countrywide, for the benefit of Massachusetts Mutual as lender, filed suit in the 48th District Court of Tarrant County, seeking judicial foreclosure of the lien secured by appellant's residence. Appellant answered and counterclaimed with the same matters raised in her prior petition. Both appellant's and appellees' suits were transferred to the 153rd District Court and consolidated into one cause number.

Appellees filed a traditional motion for summary judgment on their claim for judicial foreclosure and both traditional and no-evidence motions on appellant's claims against them. Appellant responded, but the trial court granted a final and appealable summary judgment for appellees on both their foreclosure claim and appellant's counterclaims. Appellant then perfected this appeal.

---

[3]The $35,839.39 represents approximately eighteen months of nonpayment and includes $2174.36 in late charges and $2824.80 in other charges.

4

## Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of*

5

*Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.  *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

**Analysis**

To obtain judicial foreclosure, appellees had to show that the note sued on is a purchase money note, that a part of the purchase money is due and unpaid, and that the property on which the lien is to be enforced is the same property subject to the lien.  *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 362 (Tex. App.—Dallas 2007, pet. denied); 63 Tex. Jur. 3d *Real Estate Sales* §§ 436, 441 (2002).  This they did through their summary judgment evidence, which included a copy of the note endorsed to Countrywide; the deed of trust; an assignment of the note and deed of trust to "Countrywide Home Loans, Inc. for the benefit of the purchaser, Massachusetts Mutual Life Insurance Company"; a statement showing payments and debits related to appellant's loan number from 2/12/04 to 1/16/09; and an affidavit from a Countrywide senior paralegal averring

6

that appellant was in arrearage $64,351.92 as of June 2009. Accordingly, it was appellant's burden to raise a fact issue as to any defenses to foreclosure that she had alleged. *See Dashiel v. Lott*, 243 S.W. 1072, 1072–74 (Tex. Comm'n App. 1922); *Leone v. Valiant Ins. Co.*, 461 S.W.2d 426, 427–28 (Tex. App.—El Paso 1970, no writ).

In her brief, appellant has alleged that she raised a fact issue as to the following defenses and counterclaims: lack of evidence of ownership of the note and deed of trust, wrongful foreclosure, forgery of documents, misconduct by appellees' counsel, and breach of the deed of trust by appellees.[4] Appellant's issues present argument as to whether she raised a fact issue on any of these defenses and counterclaims.

In her first and second issues, appellant contends that foreclosure is improper, and that appellees committed fraud by attempting to institute foreclosure proceedings,[5] because appellees have not shown sufficient

---

[4]Appellant alleged in the trial court that appellees violated the Fair Debt Collection Practices Act. Although she mentions the phrase, "fair debt collection practices," in her brief, she provides no argument or authority to show she raised a fact issue on that ground. *See* Tex. R. App. P. 38.1(i); *Clifton v. Walters*, 308 S.W.3d 94, 99 (Tex. App.—Fort Worth 2010, pet. denied).

[5]Appellant contended in the trial court that appellees did not provide the proper information in a foreclosure notice under section 51.0025 of the property code. But because appellees did not move forward with a foreclosure under the power of sale provision in the deed of trust and sought a judicial foreclosure instead, appellant's argument is premature. *See* Tex. Prop. Code Ann. § 51.0025 (Vernon 2007). Appellant also contends that because the deed of trust provides for a nonjudicial foreclosure, appellees cannot seek a judicial

7

ownership in the note and deed of trust and because appellees have attempted to conceal the identity of the owner of the note and deed of trust. Appellant claims that appellees are required to produce the original, unaltered note as proof.

As a federal court of appeals has explained,

> In 2009, a foreclosure defense colloquially termed "show me the note" began circulating through courts across the country. Advocates of this theory believe "that only the holder of an original wet-ink signature note has the lawful power to initiate a non judicial foreclosure." Courts have routinely rejected the defense on the ground that foreclosure statutes simply do not require production of the original note at any point during the proceedings.

*Stein v. Chase Home Fin., LLC*, No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010), *adopted*, 2010 WL 4736233 (D. Minn. Nov. 16, 2010) (citations omitted). Appellees were not required to produce the original note; they provided a copy of the note containing an endorsement to Countrywide as payee as well as the assignment of the note and deed of trust to Countrywide for the benefit of Massachusetts Mutual, with recording information attached. *See Alexander v. Wells Fargo Bank, N.A.*, No. 02-10-00005-CV, 2011 WL 1331519, at *3 (Tex. App.––Fort Worth Apr. 7, 2011, no pet. h.) (mem. op.). Accordingly, they provided sufficient summary judgment proof of the loan servicing arrangement authorizing Countrywide to service the loan for

foreclosure of the deed of trust. But the deed of trust authorizes the lender to invoke the power of sale or "any other remedies permitted by applicable law."

8

Massachusetts Mutual as the owner. *See* Tex. Bus. & Com. Code Ann. §§ 3.205, 3.301 (Vernon 2002). We overrule appellant's first and second issues.

In her third issue, appellant claims that appellees committed fraud by fabricating the assignment of the note and deed of trust because the assignment was not recorded until 2006 and because it is not signed by the lender. Appellant also claims the copies of the note and deed of trust attached to appellees' summary judgment motion as evidence were altered, forged, or both.

Appellant complains about barcodes and "squiggles" on the assignment; however, these appear to be identifications generated by either electronic recording of the documents or an electronic identification system. She provides no authority indicating that the additions of such indentifying barcodes voids the documents. *See* Tex. Bus. & Com. Code Ann. § 3.407 (Vernon 2002) (providing that alteration must be material and fraudulent to void instrument). The assignment of the deed of trust was signed on behalf of MERS, the beneficiary in the deed of trust. *See Athey v. Mortg. Elec. Registration Sys., Inc*., 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied). As a Texas federal court has explained,

> The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system."

9

*Richardson v. CitiMortgage, Inc*., No. 6:10cv119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (mem. op. and order) (citations omitted). "Book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." Tex. Prop. Code Ann. § 51.0001(1) (Vernon Supp. 2010). A book entry system such as MERS is included within the definition of "mortgagee" under Texas law. *Id*. § 51.0001(4). Thus, although the transfer to appellees through MERS took place in 2004, the actual assignment was not recorded until 2006, in anticipation of foreclosure proceedings. Appellant has not provided any authority showing how this later recording affected the validity of the assignment. Moreover, contrary to appellant's contentions, the lender to whom a note and deed of trust are assigned is not required to sign the assignment. *See id.* § 5.021 (Vernon 2004).

Appellant likewise failed to bring forward any evidence raising a fact issue as to her claims of forgery. The signatures of appellant on the note and deed of trust are consistent with the signatures on the copies of the other loan closing documents provided by appellant. And appellant brought forward no evidence that the endorsements on the note and the signature on the assignment of the deed of trust were not authorized. *See* Tex. Bus. & Com. Code Ann. § 3.308 (Vernon 2002); *Pool v. Diana*, No. 03-08-00363-CV, 2010 WL 1170234, at *9

10

(Tex. App.—Austin Mar. 24, 2010, pet. denied) (mem. op.). Accordingly, we overrule appellant's third issue.

In her fourth and sixth issues, appellant alleges that appellees' counsel committed misconduct by concealing the identity of the lender during discovery and by withholding discovery, in particular the original of the note. She also contends that appellees' continued pursuit of foreclosure with knowledge that they lack such ownership is a breach of the deed of trust. Appellant never established in the trial court that she was entitled to any additional discovery, nor did she provide evidence that appellees refused to answer discovery. *See In re Lesikar*, 285 S.W.3d 577, 587–88 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). Appellant's original petition names both Countrywide and Massachusetts Mutual as defendants and identifies Countrywide as the servicer. Massachusetts Mutual attached a copy of the assignment of the note and deed of trust, with recording information attached, to its motion for summary judgment. Moreover, appellees were not required to produce the original note as proof that Massachusetts Mutual was the current owner. *See Alexander*, 2011 WL 1331519, at *3. Accordingly, we conclude and hold that appellees were entitled to summary judgment on appellant's claims regarding actions by their counsel. We overrule appellant's fourth and sixth issues.

In her fifth issue, appellant claims that appellees breached the deed of trust by interfering with her performance under it (in the trial court she alleged

11

that appellees did not credit payments she had made, and even returned some payments) and by failing to obtain HUD approval before attempting to foreclose. Although appellant presented evidence that Countrywide did return a payment to her, the letter evidencing that return shows that appellant was already in default at the time and that the payment was not enough to bring the account current. Moreover, appellant failed to present any evidence disputing appellees' affidavit evidence that she has failed to make any payments since June 14, 2007, yet she has still been living in the house secured by appellees' lien while appellees have continued to pay the property taxes and insurance. *See id*. Additionally, appellant has no private right of action regarding any alleged failure by appellees to follow HUD regulations, even those incorporated in the deed of trust. *See, e.g., Mitchell v. Chase Home Fin. LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *4 (N.D. Tex. Mar. 4, 2008) (mem. op. and order). Accordingly, we conclude and hold that appellees were entitled to summary judgment on appellant's breach of contract claims. We overrule her fifth issue.

In her seventh issue, appellant contends generally that she raised a fact issue or issues sufficient to defeat appellees' motions for summary judgment. After a thorough review of the entire record, we conclude and hold that the trial court did not err by granting summary judgment to appellees; appellant failed to raise a fact issue on appellees' claim for judicial foreclosure and on her counterclaims. We overrule appellant's seventh issue.

## Conclusion

Having overruled appellant's seven issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  May 19, 2011