02-09-330-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00330-CV

 

 


 
 
 Lurea Hornbuckle and William Hornbuckle, Sr. Estate
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Countrywide HOME Loans, Inc. and Massachusetts
 Mutual Life Insurance Company
 
 
  
 
 
 APPELLEES
 
 


 

 

------------

 

FROM THE 153rd
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

----------

This is an appeal from the
trial court’s summary judgment in favor of appellees Countrywide Home Loans,
Inc. and Massachusetts Mutual Life Insurance Company dismissing with prejudice
all of the claims asserted against them by appellants Lurea Hornbuckle and the
estate of William Hornbuckle, Sr. (collectively, appellant) and allowing
appellees to judicially foreclose their loan on appellant’s residence.  We
affirm.

Background

Appellant Lurea and her
now-deceased husband, William, purchased a home in Arlington on March 1, 2002. 
To purchase the home, they obtained an FHA loan from Principal Residential
Mortgage, Inc. (PRMI).  The Hornbuckles signed a note and deed of trust both
dated March 1, 2002.  The lender was identified in both documents as PRMI, but
the beneficiary in the deed of trust is Mortgage Electronic Registration
Systems, Inc. (MERS) as the nominee for PRMI.

In late 2003 or early 2004, servicing
of the loan was transferred to Countrywide.  Nothing in the record shows that
the Hornbuckles were informed that PRMI sold the note and deed of trust to
Massachusetts Mutual.  But a letter to the Hornbuckles from Countrywide shows
that the Hornbuckles knew PRMI had transferred servicing of the loan as of at
least February 10, 2004 and that they knew Countrywide was the new servicer as
of at least March 29, 2004.  Countrywide began crediting payments from the
Hornbuckles in March 2004 although the Hornbuckles expressed their
dissatisfaction with the transfer of the servicing and questioned whether PRMI
had transferred, or Countrywide had credited, their entire escrow account. 
Countrywide’s records show that the March 2004 payment was credited to the
January 2004 note installment due, but because PRMI transferred only $21.60 for
the escrow account and Countrywide paid the Hornbuckles’ home insurance in
March, the escrow account had a negative balance at that time.  Accordingly, the
Hornbuckles were two months behind in payments until January 2005, when they brought
their account current.  However, they still had a negative escrow balance, and
they failed to make their February 2005 payment.  After that, they were at
least one month past due on all of their payments throughout 2005.  Countrywide
sent the Hornbuckles a letter on November 16, 2005, telling them it would
accelerate the note if they did not cure the default by paying $6,417.49 on or
before December 21, 2005.  Countrywide did not foreclose at that time.

William died intestate[2]
in late 2005, and Lurea filed a petition for bankruptcy on May 1, 2006.  Throughout
2006 and 2007, Lurea fell further and further behind in making payments on the
note; Countrywide’s records show that she stopped making payments altogether in
June 2007.  Lurea’s bankruptcy was dismissed on October 11, 2007 without
discharging any debts that were outstanding at that time.

On September 24, 2007, appellant
sued appellees in the 17th District Court of Tarrant County for DTPA violations
and fraud, seeking an injunction against them foreclosing on the residence. 
She accused appellees of wrongful acceleration of the note, wrongful debt
collection practices, and wrongful refusal to give her an accurate amount
required to cure the default.  Appellant did not ask for a hearing, and the
trial court never issued an injunction.

On December 5, 2007,
Countrywide sent appellant a second letter stating its intention to accelerate
the note if appellant failed to cure a default of now $35,839.39[3]
by December 25, 2007.  Instead of attempting to foreclose, however,
Countrywide, for the benefit of Massachusetts Mutual as lender, filed suit in
the 48th District Court of Tarrant County, seeking judicial foreclosure of the
lien secured by appellant’s residence.  Appellant answered and counterclaimed with
the same matters raised in her prior petition.  Both appellant’s and appellees’
suits were transferred to the 153rd District Court and consolidated into one
cause number.

Appellees filed a traditional
motion for summary judgment on their claim for judicial foreclosure and both
traditional and no-evidence motions on appellant’s claims against them. 
Appellant responded, but the trial court granted a final and appealable summary
judgment for appellees on both their foreclosure claim and appellant’s
counterclaims.  Appellant then perfected this appeal.

Standards
of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A plaintiff is entitled
to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing
City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit
evidence favorable to the nonmovant if reasonable jurors could, and we
disregard evidence contrary to the nonmovant unless reasonable jurors could
not.  Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009) (quoting
Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Smith v. O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009); King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied,
541 U.S. 1030 (2004).

Analysis

To obtain judicial foreclosure,
appellees had to show that the note sued on is a purchase money note, that a
part of the purchase money is due and unpaid, and that the property on which
the lien is to be enforced is the same property subject to the lien.  Kyle
v. Countrywide Home Loans, Inc., 232 S.W.3d 355, 362 (Tex. App.––Dallas
2007, pet. denied); 63 Tex. Jur. 3d Real Estate Sales §§ 436, 441
(2002).  This they did through their summary judgment evidence, which included
a copy of the note endorsed to Countrywide; the deed of trust; an assignment of
the note and deed of trust to “Countrywide Home Loans, Inc. for the benefit of
the purchaser, Massachusetts Mutual Life Insurance Company”; a statement
showing payments and debits related to appellant’s loan number from 2/12/04 to
1/16/09; and an affidavit from a Countrywide senior paralegal averring that
appellant was in arrearage $64,351.92 as of June 2009.  Accordingly, it was
appellant’s burden to raise a fact issue as to any defenses to foreclosure that
she had alleged.  See Dashiel v. Lott, 243 S.W. 1072, 1072–74 (Tex.
Comm’n App. 1922); Leone v. Valiant Ins. Co., 461 S.W.2d 426, 427–28
(Tex. App.––El Paso 1970, no writ).

In her brief, appellant has
alleged that she raised a fact issue as to the following defenses and counterclaims: 
lack of evidence of ownership of the note and deed of trust, wrongful
foreclosure, forgery of documents, misconduct by appellees’ counsel, and breach
of the deed of trust by appellees.[4] 
Appellant’s issues present argument as to whether she raised a fact issue on
any of these defenses and counterclaims.

In her first and second
issues, appellant contends that foreclosure is improper, and that appellees
committed fraud by attempting to institute foreclosure proceedings,[5]
because appellees have not shown sufficient ownership in the note and deed of
trust and because appellees have attempted to conceal the identity of the owner
of the note and deed of trust.  Appellant claims that appellees are required to
produce the original, unaltered note as proof.

As a federal court of appeals
has explained,

In 2009, a foreclosure defense colloquially termed “show me
the note” began circulating through courts across the country. Advocates of
this theory believe “that only the holder of an original wet-ink signature note
has the lawful power to initiate a non judicial foreclosure.”  Courts have
routinely rejected the defense on the ground that foreclosure statutes simply
do not require production of the original note at any point during the
proceedings.

 

Stein
v. Chase Home Fin., LLC, No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *3 (D.
Minn. Aug. 13, 2010), adopted, 2010 WL 4736233 (D. Minn. Nov. 16, 2010)
(citations omitted).  Appellees were not required to produce the original note;
they provided a copy of the note containing an endorsement to Countrywide as
payee as well as the assignment of the note and deed of trust to Countrywide
for the benefit of Massachusetts Mutual, with recording information attached.  See
Alexander v. Wells Fargo Bank, N.A., No. 02-10-00005-CV, 2011 WL 1331519,
at *3 (Tex. App.––Fort Worth Apr. 7, 2011, no pet. h.) (mem. op.).  Accordingly,
they provided sufficient summary judgment proof of the loan servicing
arrangement authorizing Countrywide to service the loan for Massachusetts
Mutual as the owner.  See Tex. Bus. & Com. Code Ann. §§ 3.205,
3.301 (Vernon 2002).  We overrule appellant’s first and second issues.

In her third issue, appellant
claims that appellees committed fraud by fabricating the assignment of the note
and deed of trust because the assignment was not recorded until 2006 and
because it is not signed by the lender.  Appellant also claims the copies of
the note and deed of trust attached to appellees’ summary judgment motion as
evidence were altered, forged, or both.

Appellant complains about
barcodes and “squiggles” on the assignment; however, these appear to be
identifications generated by either electronic recording of the documents or an
electronic identification system.  She provides no authority indicating that
the additions of such indentifying barcodes voids the documents.  See
Tex. Bus. & Com. Code Ann. § 3.407 (Vernon 2002) (providing that alteration
must be material and fraudulent to void instrument).  The assignment of the
deed of trust was signed on behalf of MERS, the beneficiary in the deed of
trust.  See Athey v. Mortg. Elec. Registration Sys., Inc., 314 S.W.3d
161, 166 (Tex. App.––Eastland 2010, pet. denied).  As a Texas federal court has
explained,

The MERS system is merely an electronic mortgage
registration system and clearinghouse that tracks beneficial ownerships in, and
servicing rights to, mortgage loans.  The system is designed to track transfers
and avoid recording and other transfer fees that are otherwise associated with
the sale.  MERS is defined in Texas Property Code § 51.0001(1) as a “book entry
system.”

 

Richardson
v. CitiMortgage, Inc., No. 6:10cv119, 2010 WL 4818556, at *5 (E.D. Tex. Nov.
22, 2010) (mem. op. and order) (citations omitted).  “Book entry system” is
defined as “a national book entry system for registering a beneficial interest
in a security instrument that acts as a nominee for the grantee, beneficiary,
owner, or holder of the security instrument and its successors and assigns.”  Tex.
Prop. Code Ann. § 51.0001(1) (Vernon Supp. 2010).  A book entry system such as
MERS is included within the definition of “mortgagee” under Texas law.  Id.
§ 51.0001(4).  Thus, although the transfer to appellees through MERS took place
in 2004, the actual assignment was not recorded until 2006, in anticipation of
foreclosure proceedings.  Appellant has not provided any authority showing how
this later recording affected the validity of the assignment.  Moreover, contrary
to appellant’s contentions, the lender to whom a note and deed of trust are
assigned is not required to sign the assignment.  See id. § 5.021
(Vernon 2004).

Appellant likewise failed to
bring forward any evidence raising a fact issue as to her claims of forgery.  The
signatures of appellant on the note and deed of trust are consistent with the
signatures on the copies of the other loan closing documents provided by
appellant.  And appellant brought forward no evidence that the endorsements on
the note and the signature on the assignment of the deed of trust were not
authorized.  See Tex. Bus. & Com. Code Ann. § 3.308 (Vernon 2002); Pool
v. Diana, No. 03-08-00363-CV, 2010 WL 1170234, at *9 (Tex. App.––Austin
Mar. 24, 2010, pet. denied) (mem. op.).  Accordingly, we overrule appellant’s
third issue.

In her fourth and sixth
issues, appellant alleges that appellees’ counsel committed misconduct by
concealing the identity of the lender during discovery and by withholding
discovery, in particular the original of the note.  She also contends that
appellees’ continued pursuit of foreclosure with knowledge that they lack such
ownership is a breach of the deed of trust.  Appellant never established in the
trial court that she was entitled to any additional discovery, nor did she
provide evidence that appellees refused to answer discovery.  See In re
Lesikar, 285 S.W.3d 577, 587–88 (Tex. App.––Houston [14th Dist.] 2009,
orig. proceeding).  Appellant’s original petition names both Countrywide and
Massachusetts Mutual as defendants and identifies Countrywide as the servicer. 
Massachusetts Mutual attached a copy of the assignment of the note and deed of
trust, with recording information attached, to its motion for summary judgment. 
Moreover, appellees were not required to produce the original note as proof
that Massachusetts Mutual was the current owner.  See Alexander, 2011 WL
1331519, at *3.  Accordingly, we conclude and hold that appellees were entitled
to summary judgment on appellant’s claims regarding actions by their counsel. 
We overrule appellant’s fourth and sixth issues.

In her fifth issue, appellant
claims that appellees breached the deed of trust by interfering with her
performance under it (in the trial court she alleged that appellees did not
credit payments she had made, and even returned some payments) and by failing
to obtain HUD approval before attempting to foreclose.  Although appellant
presented evidence that Countrywide did return a payment to her, the letter
evidencing that return shows that appellant was already in default at the time
and that the payment was not enough to bring the account current.  Moreover,
appellant failed to present any evidence disputing appellees’ affidavit
evidence that she has failed to make any payments since June 14, 2007, yet she
has still been living in the house secured by appellees’ lien while appellees have
continued to pay the property taxes and insurance.  See id.  Additionally,
appellant has no private right of action regarding any alleged failure by
appellees to follow HUD regulations, even those incorporated in the deed of
trust.  See, e.g., Mitchell v. Chase Home Fin. LLC, No. 3:06-CV-2099-K,
2008 WL 623395, at *4 (N.D. Tex. Mar. 4, 2008) (mem. op. and order). 
Accordingly, we conclude and hold that appellees were entitled to summary
judgment on appellant’s breach of contract claims.  We overrule her fifth
issue.

In her seventh issue,
appellant contends generally that she raised a fact issue or issues sufficient
to defeat appellees’ motions for summary judgment.  After a thorough review of
the entire record, we conclude and hold that the trial court did not err by granting
summary judgment to appellees; appellant failed to raise a fact issue on appellees’
claim for judicial foreclosure and on her counterclaims.  We overrule
appellant’s seventh issue.

Conclusion

Having overruled appellant’s
seven issues, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

 

DELIVERED:  May 19, 2011









[1]See
Tex. R. App. P. 47.4.





[2]Appellant
does not contest that William died intestate.  Under the probate code, his
interest in the property immediately vested in his heirs at law subject,
however, to the outstanding debt.  See Tex. Prob. Code Ann. §§ 37, 38
(Vernon 2003).





[3]The
$35,839.39 represents approximately eighteen months of nonpayment and includes
$2174.36 in late charges and $2824.80 in other charges.





[4]Appellant
alleged in the trial court that appellees violated the Fair Debt Collection
Practices Act.  Although she mentions the phrase, “fair debt collection
practices,” in her brief, she provides no argument or authority to show she
raised a fact issue on that ground.  See Tex. R. App. P. 38.1(i); Clifton
v. Walters, 308 S.W.3d 94, 99 (Tex. App.––Fort Worth 2010, pet. denied).





[5]Appellant
contended in the trial court that appellees did not provide the proper
information in a foreclosure notice under section 51.0025 of the property code. 
But because appellees did not move forward with a foreclosure under the power
of sale provision in the deed of trust and sought a judicial foreclosure
instead, appellant’s argument is premature.  See Tex. Prop. Code Ann. §
51.0025 (Vernon 2007).  Appellant also contends that because the deed of trust
provides for a nonjudicial foreclosure, appellees cannot seek a judicial
foreclosure of the deed of trust.  But the deed of trust authorizes the lender
to invoke the power of sale or “any other remedies permitted by applicable
law.”